PAUL A. ENGLISH, APPELLEE, v. JOHN O. MILLIGAN, APPELLANT.

JOHN O. MILLIGAN, APPELLANT, v. PAUL A. ENGLISH, APPELLEE.

[FILED SEPTEMRER 17, 1889.]

1. **Evidence.** The finding of facts by the district court *held* to be sustained by sufficient evidence.

2. **Partnership:** DISSOLUTION CONTRACT: SPECIFIC PERFORMANCE. A and B were in partnership in carrying on the business of dealing in lumber, grain, agricultural implements, etc., and were possessed of an elevator and offices for the transaction of business, and other real estate, most of which was held in the name of B. The partnership was dissolved, when B made a written proposition to sell his interest in the firm, including a portion of the real estate, for a specified sum of money to be paid in part by taking a portion of the real estate at an agreed price, the balance to be paid in money, to be realized out of the collection of notes and accounts due the firm, after the payment of all firm indebtedness, the same to be collected by A without expense to B; the loss of all the uncollectable claims to be borne equally by the two, the balance of the purchase price to be paid in money by A after the business had been wound up. Under this contract the parties took possession of the real estate designated as belonging to each, but B refused to execute the necessary conveyances. In an action by A against B for the specific performance of the contract, it was held that A was entitled to

maintain the action, in order to the protection of his rights, but that he was not entitled to a final decree until he had complied with all the terms of the contract on his part to be complied with, and the full payment of the purchase price.

APPEALS from the district court for Wayne county. Heard below before NORRIS, J.

*Northrop & Welch,* and *J. C. Crawford,* for appellant Milligan:

Misrepresentations were made by appellee, and whether fraudulent or not, if acted upon by another to his prejudice, are grounds of relief in equity. (*Morgan v. Hardy,* 16 Neb., 427). Mutuality of obligation is a necessary element in contract. (*State v. Barker,* 4 Kas., 380). As to the requisites of a decree of specific performance; Pomeroy, Eq. Jur., Vol. 3, Sec. 1,405 N. 1. *Morgan v. Hardy,* 16 Neb., 438. The alleged contract of April 28 failed to show the name of the proposed vendee or to describe the property, and upon its face was an agreement for credit whose terms were not fixed; hence it is wholly insufficient. (*Schmeling v. Kreisel,* 45 Wis., 325; *Blanchard v. McDougal,* 6 Id., 167; *Knoll v. Harvey,* 19 Id., 99; *Tiernan v. Gibney,* 24 Id., 190; *Iron Co. v. Todd,* 14 Atl. Rep., 27.) As the possession of English was uninterrupted throughout, there could be no new possession, but only a continuation of that which he had. (*Blanchard v. McDougal,* 6 Wis., 167; *Knoll v. Harvey,* 19 Id., 99.) An agreement will not be enforced which is not certain, mutual, and reasonable, or which is tainted with fraud, surprise, improper concealment or misrepresentation. (3 Wait's Act. and Def., 188; *Flight v. Bolland,* 4 Russ., 298; *Cathcart v. Robinson,* 5 Pet. [U. S.], 264; *German v. Machin,* 6 Paige, 288; *Bruck v. Tucker,* 42 Cal. 346; *Waring v. Ayres,* 40 N. Y., 357; *Blanchard v. Ry. Co.,* 31 Mich., 43.) A party cannot compel the performance of a contract by another which he is not himself bound to perform. (Pomeroy, Eq. Jur.,

Vol. 3, Sec. 1,405, N. 1, 2; *Cordova v. Smith*, 9 Tex., 129; 58 Am. Dec., 136; *Bodine v. Glading*, 21 Pa. St., 50; 59 Am. Dec., 749; 5 Wait's Act. and Def., 778.)

*H. C. Brome*, and *James Britton*, for appellee:

The claim of misrepresentation is refuted by the evidence. A verbal contract for the sale of real estate, where there is possession and part performance, will be specifically enforced. (*Haines v. Spanogle*, 17 Neb., 637.) The possession of English was under the contract of purchase, and coupled with payment would avail as part performance. (*Blanchard v. McDougal*, 6 Wis., 165.)

REESE, CH. J.

Prior to the commencement of the two suits which are now before us, the principal parties Milligan, and English, were partners doing business in Wayne, in this state, as J. O. Milligan & Company; the business being that of buying and selling lumber, agricultural implements, grain, and coal.

On the 14th day of October, 1887, English, as plaintiff, filed his petition in the district court, in which the fact of the partnership was alleged, and that on the 16th day of May, 1887, the firm owned one elevator building, on the right of way of the Chicago, St. Paul, Minneapolis & Omaha Railroad Company, also lots 7, 8, 9, 10, 11, and 14, in block 20, in the town of Wayne, also a house and lot known as the Woodruff house, described as lot 3, and the south half of lot 2 in block 7, in Crawford & Brown's addition to said town; also obligations and accounts amounting to a large sum, and grain in the crib. The legal title to lot 13, block 20, was in the name of plaintiff and defendant as tenants in common. The title to the house known as the Woodruff house was in the firm name of J. O. Milligan & Company. The title to lots

7, 8, 9, 10, 11, and 14, was in the name of defendant John O. Milligan. The corn cribs were located on the land, the title to which was in Milligan, the said title being held in trust for the firm. On lots 7 and 8 in block 20, the firm had constructed a brick block of great value with partnership funds. It was alleged that on or about the said 16th day of May, 1887, defendant entered into an agreement with plaintiff, and thereby sold and agreed to deed to plaintiff all of defendant's right, title, and interest in all of the property described, and including the business of the firm, for the sum of twenty-nine thousand dollars, which plaintiff agreed to pay; that by the terms of said agreement defendant was to take as part payment of said account the elevator building at five thousand dollars; the house and lot known as the Woodruff house at eleven hundred dollars, the balance to be paid in notes, demands, and accounts due the firm; that in case the proceeds to be collected were insufficient to pay the remainder, plaintiff should pay the deficiency in money; and in case any claims should be lost the loss should fall equally on both parties; that plaintiff should collect the outstanding claims without charge to defendant, and that defendant should have all the profits of the elevator business after January 1st, 1887; that in pursuance of said agreement and sale the partnership was dissolved and defendant took possession of the elevator building and had occupied the same ever since, dealing in grain therein, and had also taken possession of the property known as the Woodruff house, and received the rents and profits thereof; that at the same time plaintiff took possession of all the other property formerly owned by the firm and had ever since occupied the same; that on the 1st day of June, 1887, defendant bought of plaintiff the contracts for grain and the grain in the elevator, amounting to four thousand five hundred and sixty-four dollars and thirty-two cents; and the corn in the crib of the value of four hundred and

eighty-four dollars, which by the sale had become the property of the plaintiff, and had agreed to apply the same as part payment of the twenty-nine thousand dollars; that on the 4th day of the same month, at the request of defendant, plaintiff paid ninety-one dollars and ninety cents on checks issued by defendant; that since the said 1st day of June plaintiff had proceeded with due diligence to collect the note and accounts due the firm, which exceeded the liabilities of the firm, and the amount due defendant, and was still so engaged; that on the 20th day of June, 1887, he executed the necessary conveyances to be made by him to defendant and offered the same to defendant, who refused to accept them, and that he demanded the proper conveyances from defendant, which defendant also refused to make; that after the making of the agreement referred to, and in violation thereof, defendant executed to defendant Gardenier a mortgage on his interest in lots 7 and 8 in block 20, upon which the brick building had been erected, but at the time of the execution thereof the property mortgaged was in the possession of plaintiff, and that Gardenier well knew of his rights under his purchase, and that the mortgage was in fraud of plaintiff's rights. A specific performance of the contract was prayed.

To this petition defendant Milligan filed his answer, admitting the existence of the partnership, to ownership of the accounts and notes, the grain, elevator, and property known as the Woodruff house, that the legal title in lots 7, 8, 9, 10, 11, 14, block 20, was in him, and that the firm had constructed the brick house on lot 7 with partnership funds and by so doing the firm had obtained an equitable interest in said lot which he was willing to convey to it upon being paid its value; and denying that plaintiff or said firm had any interest whatever in the title to the other lots in said block. The execution of a mortgage for two thousand dollars to Gardenier was admitted, but all fraud was denied in connection therewith, and it was alleged that it

was executed in good faith and for value. It was alleged that about the first day of January, 1887, it was agreed by plaintiff and defendant that the partnership business should be closed up and discontinued as soon as practicable thereafter; that plaintiff, who had had charge of the business of the firm, should cease buying, excepting such articles as might be of immediate use, and collect all accounts and notes due the firm as fast as possible, and should reduce the liabilities as rapidly as practicable; and that he should endeavor to find a purchaser for the property and business of the firm; that about the 27th of April, 1887, plaintiff came to the residence of the defendant at Scribner and represented to defendant that he had found a purchaser for the whole firm property in Wayne; that the liabilities of the firm did not exceed five hundred dollars, and that the accounts due to the firm held by him for collection had, by collection, been reduced to six thousand dollars, and desired defendant to state what he would take for his interest; that relying upon the representations of plaintiff, as to the amount of the assets and liabilities of the firm, defendant agreed, if the sale of the entire property and business of said firm could be made, to take twenty-nine thousand dollars for his interest; and for the purpose of aiding in effecting a sale, that if the elevator and Woodruff house and lot could not be included in such sale, he would take the elevator at five thousand dollars, and the house and lot at eleven hundred dollars; that for the purpose of having a complete settlement of the partnership affairs, and relying on the statements of plaintiff as to the assets and liabilities of the firm, he agreed to take the notes and accounts, which would amount to $5,500, and which would leave about $1,700 due him in case the sale should be made; that no purchaser was ever found, and no person had ever paid, or offered to pay, the defendant the purchase price of said property; that on the 28th day of April, 1887, the liabilities of the firm were $22,741.29 and that notes and accounts due said firm

on that day amounted to $26,841.55 ; all of which was well known to plaintiff; that he never offered to sell plaintiff lots 7, 8, 9, 10, 11, and 14, in block 20, in the town of Wayne, or to contract with him in relation thereto ; that for more than a year prior to June 1, 1887, one Stephen B. Russell had been employed by the firm in and about the elevator and grain business at Wayne, and that about that time plaintiff notified Russell that he (plaintiff) would have nothing more to do with that part of the partnership property consisting of the elevator, grain therein, corn in the cribs, and contracts for the purchase of grain, and that he abandoned the same; that upon defendant being informed of the fact, he directed Russell to continue in charge and preserve the property, and dispose of the grain then on hand for the benefit of the firm, and defendant sent to Russell money of his own personal funds to enable him to do so; that Russell did as directed, and remitted the proceeds — $2,854.60 — to defendant, who applied $1,471 thereof to the payment of a debt due him from the firm, $990 thereof to the payment of a debt due W. F. McCrary & Company from the firm, leaving a balance of $393.20 which he held for the benefit of the firm, and for which he was ready to account; that his possession of the elevator was made necessary by the abandonment thereof by plaintiff and was alone for the benefit of the firm. All averments of the petition not admitted were denied.

Plaintiff's reply consisted of a general denial of all the new matter contained in the answer.

On the 19th day of November, 1887, Milligan, as plaintiff, instituted an action against English, as defendant. In his petition he set out at length the formation and contract of the partnership, the accumulation by it of a large amount of property at Wayne and Winside, the amount of the capital placed in the firm by himself, the undertaking of defendant English to carry on the business and pay the debts and expenses of the business; his failure to do so ;

that the partnership was dissolved; the sale of the property and business at Winside; that defendant had failed and refused to keep an exact and correct account of moneys received and expended by him; that he had wrongfully applied the partnership funds to his own use, and refused to account for the same; had excluded plaintiff from access to the property, and had set up a claim of ownership adverse to him. The terms of the partnership, as alleged in the first paragraph of the petition, were, that the defendant English should be at all the expense of carrying on said business and pay all the said expenses out of his share of the profits, to-wit, one half, and that one-half of the gross profits of the business should be credited to plaintiff Milligan at the end of each year.

English filed his answer to this petition; *First,* denying all the allegations thereof except such as were expressly admitted; *Second,* admitting the formation of the partnership as stated in the first paragraph of the petition of the plaintiff, but alleging that the contract of partnership was modified on the 1st day of March, 1883, so that all earnings made by the partnership profits due, and accruing to defendant and reinvested in the partnership business by him, were to inure to his exclusive benefit, and that plaintiff should have no right to participate therein during the existence of the partnership; that the modification was assented to, acted upon, and fully ratified, and became a part of the original article of the partnership; that the partnership fund was reduced to $22,157.54, of which sum the parties respectively were to contribute one-half, and in addition to the share of the partnership fund which he, the defendant, was to receive, he was to devote his whole time to the care and control of the business, and as compensation for his personal services, was to receive the sum of $75.00 per month, to be paid him by the firm; that plaintiff Milligan should withdraw from the capital invested in the partnership business at that time such

sum as exceeded the amount that plaintiff was bound to contribute to the business under the modification; but that the withdrawal was to be at such time and for such amounts as not to endanger the financial standing of the firm; that all sums paid over between the first day of January and the first day of June, 1886, on such excess, were to draw interest at the rate of ten per cent per annum from January, 1887; interest to be paid by Milligan and Company to Milligan, and that all sums remaining due and unpaid from and after June 1, 1886, were to yield to Milligan the same percentage as his half interest in the partnership business; that the copartnership relation as then existing and as modified was continued until about the 16th day of May, 1887, plaintiff at all times assenting to, knowing of, and ratifying the partnership as modified, and that on that date the partnership was dissolved; that on that date plaintiff Milligan submitted a written proposition for a dissolution and settlement of the business, which is set out in full in the answer, and will be hereafter noticed but need not be now copied; that defendant English accepted the proposition so made by plaintiff and the partnership affairs were settled; the plaintiff Milligan had taken possession and exclusive control of the elevator building, and also of the Woodruff house and lot, and had used both for his exclusive use and benefit and in his own name since that time; that in pursuance of the agreement defendant took possession of the business at Winside, also the brick store building referred to; that defendant had tendered the plaintiff proper conveyances for the property received and occupied by him, and also the notes and accounts of the firm of J. O. Milligan & Company; that there had been paid to the plaintiff in the elevator building, the Woodruff house, grain and contracts for grain, and corn cribs, the sum of $11,548.52, they having been previously purchased of the plaintiff by the defendant, and were applied on the payment of $29,000; that at the time of the contract the

liabilities of the firm were about $16,000, and that the accounts and bills receivable of the firm aggregated about $30,000; that since that time defendant had collected about $10,500 of the same, which had been applied to the payment of the liabilities of the firm; and at the request of plaintiff, defendant had made statements to the man Russell in charge of the elevator of the amount collected and paid out.

The reply consisted of a general denial of all new matter alleged in the answer.

When the causes came on for trial in the district court they were consolidated, so far as the trial was concerned, and tried as one case; but different findings were made by the court in each case. In the suit of English against Milligan, the court found that the plaintiff was entitled to the specific performance of the contract set out in his petition; that lots 7, 8, 9, 10, 11, and 14, in block 20, in the town of Wayne were, at the time of the commencement of the suit, partnership property, and that the plaintiff, as one of the partners, was in possession of said property at the time the mortgage was given to Gardenier, and that the said mortgage was void and of no effect. A decree was entered in the usual form, requiring the execution of the contract on the part of Milligan and setting aside the mortgage executed by Milligan and wife to Gardenier. In the case of Milligan against English there was a general finding in favor of the defendant and a decree that the action be dismissed. From these two decrees Milligan appeals to this court and presents the cases as one, and they are so treated in the arguments and briefs.

No appearance was made in the district court by Gardenier.

The evidence submitted upon the trial was conflicting in a high degree upon every material point in the case; and it would be impossible for us to separate the true from the untrue, or to say which of the witnesses testified truthfully and which falsely.

The proposition of sale made by Milligan was in writing, and as follows:

"April 28th, 1887.

"I propose to sell and deed the lots on north side of track, used for lumber, lots on south side of track not included, and my interest in the business at Wayne, for twenty-nine thousand dollars, I agreeing to take the elevator at five thousand dollars, and the property known as the Woodruff house in Wayne, for eleven hundred dollars as part payment on the twenty-nine thousand dollars. I am to have all the profits on the elevator business from January 1, 1887, and to have the interest on all notes and accounts from February 1. I am to take the notes and accounts due the company, all over and above the liabilities of said company, as part pay, with this condition: Paul English is to collect them free of any charge, and any notes or accounts that we lose, he, Paul English, is to lose half, together with the interest that would be due on the same; balance due me after taking out the items mentioned above to be paid in cash, or if any time beyond May 1, 1887, is given, to draw ten per cent until paid.

"J. O. MILLIGAN."

It is shown by unquestioned proof that the parties were not satisfied with their business relations, and that each desired to be relieved from the partnership. Milligan resided at Scribner, English at Wayne. The correspondence and proof of conversation show the fact of the existing dissatisfaction. The testimony of English, is in substance, that he represented to Milligan that if he could find a purchaser for all or any part of the business he would try to purchase from Milligan; that he was about selling the lumber and implement business to Conner and Philleo; and by the agreement on the part of Milligan to retain the grain elevator and the Woodruff house, he was then able to make the purchase; that he at all times, talked with Milligan of the probability of the purchase by

himself, and with that understanding between them, the written proposition was given ; that the contract was subsequently consummated, and the possession of the Woodruff house and elevator taken by Milligan, and of the other property by himself, with the full consent of both. This finds some support in letters written by Milligan, in which the subject of leasing the elevator property to English is referred to in such a way as to indicate ownership on his part. . The questions of fact must be taken as settled by the district court, and that part of the case cannot be molested. This also must dispose of the contention of Milligan that the contract in itself is insufficient to sustain a decree for specific performance. The case cannot be disposed of upon the language of the contract alone. If it were true (as the court must have found) that the parties under its provisions went so far as to strike the balance, ascertain the condition of the accounts, exchanging possession of real property, and thus ratifying the written contract and executing its provisions, it would be too late to question it upon the ground that no purchaser was named, and that by its terms no one was designated as the buyer, or who could take under it.

But it is claimed that the contract was obtained by a suppression of fact as to the assets and liabilities of the firm. This is denied by English in his testimony, and there was some proof submitted by which the court could find that Milligan did not refuse to deliver the conveyances which he had signed until long after he had full opportunity to examine the books of the firm, and perhaps did know its exact financial condition.

But we are unable to find from the record any proof as to the exact amount of the liabilities of the firm, or how much the collectable notes and accounts are. This would be necessary in order to carry out the terms of the contract, for by it the residue of the $29,000, after deducting the price of the elevator and Woodruff property, and the

22

amount which could be realized by collections, was to be paid in money.

While English may insist upon a full execution of the agreement by Milligan, he must as fully comply on his part. To this end it is necessary that he deposit in court, for the use of Milligan, all deeds and transfers to be made by him, make a complete exhibit of the financial condition of the firm at Wayne, collect the collectible accounts and pay over the money collected, and when this is done, he cannot yet hope to have a complete specific performance until he has paid the money to be paid to Milligan by him.

The decree in the case of Milligan against English will be affirmed, and that in the case of English against Milligan will be set aside and the cause remanded to the district court with directions to retain it until all the conditions to be performed on the part of English are complied with and the purchase price paid according to the terms of the agreement; and, when this is done, to enter the order and decree necessary for its final disposition, fixing a reasonable time within which such conditions are to be performed and payments made.

JUDGMENT ACCORDINGLY.

THE other Judges concur.