STATE EX REL. APPLEMAN *v.* LAKE CIRCUIT COURT,
BROWN, AS SPECIAL JUDGE, ETC.

[No. 28,976.   Filed December 4, 1952.]

*J. H. Sachs* and *Jay E. Darlington,* both of Hammond, for relator.

*Alfred H. Highland* and *Peters & Highland* (of counsel) of Hammond, for respondent.

EMMERT, C. J.—This is an original action for a writ of prohibition. We issued a temporary writ prohibiting the Lake Circuit Court and a special judge thereof in Cause No. 35546 entitled Joseph Engelcoff v. Lester

Appleman from exercising further jurisdiction therein until further order.

In 1937 George Engelcoff and Lester Appleman entered into a partnership for the business of selling at wholesale and retail petroleum products under the firm name of Preferred Oil Company. On June 7, 1952, the relator Appleman commenced an action in the Lake Circuit Court against his partner George Engelcoff for the specific performance of a memorandum agreement executed the early part of April, 1952, by which the parties agreed that the partnership would stand dissolved as of the 15th day of March, 1952, and that Engelcoff would sell his interest therein to the relator. The written agreement is set out as an exhibit to the complaint for specific performance. The venue of the cause was changed to the Porter Circuit Court, where it is now pending on a demurrer for want of facts to an amended complaint.

On the 9th day of August, 1952, Engelcoff commenced an action against the relator in the Lake Circuit Court, being Cause No. 35546, for a judgment dissolving the partnership, an accounting, and the appointment of a receiver to dispose of the partnership property, and for all other proper relief. To this complaint the relator filed an answer in abatement, which in substance alleged the pendency of the action for specific performance in the Porter Circuit Court and that the jurisdiction of the entire matter was before the Porter Circuit Court. To this answer in abatement the plaintiff filed a demurrer which was sustained.

The contract which was the foundation of the action for specific performance recited the existence of the partnership, that the partners agreed to a dissolution, that the continuing partner should purchase from the retiring partner all of his right, title and interest in the

partnership, that "this short form of memorandum agreement for dissolution be drafted pending the adjustments of all details and the execution of a detailed dissolution agreement." The body of the contract in substance stated the agreement between the partners that the partnership be dissolved as of the 15th day of March, that the continuing partner pay the retiring partner the sum of $80,000.00 for the retiring partner's right, title and interest in and to the property and assets of the Preferred Oil Company, said payment to be made by (a) a transfer of title to a Gary building at a valuation of $20,000, and (b) $60,000 by promissory notes payable in five years and forty weeks from the date of dissolution, at the rate of $200 or more per week, drawing 5% interest per annum, said notes to be secured by certain chattel mortgages on personal property and equipment of the Preferred Oil Company, a real estate mortgage on real estate held by the continuing partner, the assignment of rents and profits by the continuing partner plus an assignment of all interest in real estate in which the continuing partner might have an interest as continuing partner. The continuing partner also promised to secure a policy of life insurance payable to the retiring partner on the life of the continuing partner in the amount to be agreed upon.[1] The continuing partner also promised to assume all liabilities existing or hereafter created by reason of the operation of the Preferred Oil Company. The retiring partner agreed that all profits past and future should belong to the continuing partner and the continuing partner agreed to indemnify the retiring partner from certain federal income taxes stated in the agreement. Both parties agreed that the withdrawal

---

[1] The complaint alleged the partner's subsequently agreed on a policy of life insurance in the sum of $20,000.

of funds ·of the partnership since January 1, 1952, should be equalized as of March 15, 1952. The two remaining paragraphs of the memorandum agreement are as follows:

"5. It is contemplated that the parties will negotiate for a lease of the Gary property by retiring partner to the continuing partner.

"6. It is agreed that this agreement is a memorandum agreement only and does not include in a detailed manner all of the terms of the dissolution agreement subsequently to be negotiated, drafted and executed. It is contemplated that the final dissolution agreement shall be made pursuant to the terms of this agreement and shall include in addition such terms as are ordinarily included in a dissolution agreement."

As we construe the entire contract, there is nothing in it that evidences an intention that the memorandum so signed by the parties was not to be considered a binding contract as it then existed, although the first sentence of Item 6 stated, "It is agreed that this agreement is a memorandum agreement only and does not include in a detailed manner all the terms of the dissolution agreement subsequently to be negotiated, drafted and executed." The preceding items contained the promises of the parties, did cover everything necessary for a dissolution agreement, and, in spite of the recital in Item 6, the promises were stated in a detailed manner. We believe the test set forth in I Williston, Contracts (Rev. Ed.) §28, p. 61, is correct. Professor Williston states the rule as follows: "As has been pointed out previously, the intention to make a legal obligation is not necessary for the existence of a contract though an expressed intent that there shall be no legal obligation is effective to prevent one. In the absence of such an expressed intent, mutual assent,

informally given, to make an exchange of acts or promises is sufficient. Consequently, if such assent exists, to avoid the conclusion that a contract has been formed it must be found as a fact that at least one of the parties has then expressed the intention not to be bound until the writing shall have been executed. The prima facie case is made out by proving the assent to the exchange." See also §§25 and 26 of Restatement, Contracts.

Item 5 which stated the parties' intention to negotiate for lease of the Gary property by the retiring partner to the continuing partner did not make the entire contract void for want of certainty. This item was divisible from the rest of the contract which contained specific promises. Nor did Item 5 prevent the continuing partner from having specific performance of the definite promises and covenants by the retiring partner. The plaintiff in the cause pending in the Porter Circuit Court for specific performance did not seek specific performance of Item 5. If he is willing to comply with his part of the contract, the retiring partner is not in any position to object because the continuing partner would not have the benefit of a lease on the Gary property occupied by the partnership. *Singer* v. *Campbell* (1927), 217 Ky. 830, 290 S. W. 667; *Price* v. *McKay* (1895), 53 N. J. Eq. 588, 32 Atl. 130; 5 Williston, Contracts (Rev. Ed.) §1431, p. 4006.

Equity has jurisdiction to grant specific performance of a contract for the dissolution of a partnership. *Elliott* v. *Jones* (1917), 11 Del. Ch. 283, 101 Atl. 872; *Whitney* v. *Dewey* (1907), 158 Fed. 385; *English* v. *Milligan* (1889), 27 Nebr. 326, 43 N. W. 120; 58 C. J. 1056.

The Porter Circuit Court, when the venue of the case for specific performance was changed to it, acquired

the same jurisdiction had by the Lake Circuit Court when the cause was pending before it.

"It is the general rule that the court to which an action is venued acquires the same jurisdiction as the court of origin. *State ex rel. Karsch* v. *Eby, Judge* (1941), 218 Ind. 431, 33 N. E. 2d 336, and cases therein cited." *State ex rel. Surprise* v. *Porter Circuit Court* (1948), 226 Ind. 375, 382, 80 N. E. 2d 107. By the change of venue the Porter Circuit Court acquired jurisdiction of all matters pertaining to the dissolution of the partnership. If the retiring partner desired a judgment disolving the partnerhip, an accounting, and appointment of a receiver, he should have presented such matters to the Porter Circuit Court by a counterclaim in the suit for specific performance. The Porter Circuit Court first obtained jurisdiction of the subject matter and the parties and "has exclusive jurisdiction until the case in that court is finally disposed of on appeal or otherwise." *State ex rel. Ferger* v. *Circuit Court of Marion County* (1949), 227 Ind. 212, 215, 84 N. E. 2d 585. See also *State ex rel. Allison* v. *Brennan* (1951), 229 Ind. 281, 97 N. E. 2d 925.

The temporary writ of prohibition is made permanent.

Draper, J., not participating.

NOTE.—Reported in 108 N. E. 2d 898.