**Judith Ann FOSTER d/b/a The Filling Station, Appellant (Defendant Below),**

v.

**UNITED HOME IMPROVEMENT COMPANY, INC., Appellee (Plaintiff Below).**

No. 2–680A195.

Court of Appeals of Indiana,
Fourth District.

Dec. 15, 1981.

Rehearing Denied Feb. 4, 1982.

Joseph F. Quill, Quill, Steckler & Bober-schmidt, Indianapolis, for appellant.

William O. Schreckengast, Kitley & Schreckengast, Beech Grove, for appellee.

MILLER, Presiding Judge.

Defendant-appellant Judith Ann Foster d/b/a The Filling Station, is appealing from a jury verdict awarding lost profits and other damages totaling $13,852.86 to plaintiff-appellee United Homes, Inc.,[1] (United) based on the failure to perform on oral contract to remodel a combination restaurant and bar operated by Foster. On appeal, Foster contends 1) there is insufficient evidence to support the establishment of an oral contract and the damages based thereon, 2) that the trial court erred in giving certain instructions and refusing others tendered by Foster; and 3) the court erred in permitting United to amend its complaint at the conclusion of all the evidence to indicate the proper corporate name for United. We affirm.

The basic facts supporting the trial court's judgment may be summarized as follows:

Foster is the operator of a restaurant/bar on the southside of Indianapolis. When she lost the lease on her previous business location, she applied to the Small Business Administration (SBA) for funds to purchase and remodel a nearby establishment. To accomplish the remodeling, Foster contacted United's president, Noel Max Bogard. According to Bogard, he first talked with Foster in the latter part of 1977, when they met at the building in question. Bogard testified Foster provided enough details for him to get the "gist" of the project and he agreed to provide a preliminary plan and approximate cost.

Bogard testified the parties met approximately three more times before the plans were made, on which occasions Foster outlined the remodeling changes "in detail" and there was also conversation as to the financing. He stated he gave Foster a figure of $3,000 for the preliminary work, and that she told him to proceed and have an engineer prepare plans so the project could be approved by the Administrative Building Council. Foster acknowledged at trial she "probably did" tell Bogard to go ahead with the plans and specifications. The parties went to a local bank to attempt to obtain financing for such work, and Bogard had surveying, drafting, and engineering work

---

1. Although the caption of the instant appeal and plaintiff's original complaint bears the appellation United Home Improvement Company, Inc., testimony at trial revealed the proper name for the corporation is United Homes, Inc.

done to prepare the plans, at a cost of approximately $3,800.

In December, Bogard submitted a written contract to Foster which she did not sign at that time because, in her words, "there was no reason to do anything" since "I didn't have my financing." The contract did not contain a "no-lien" provision prohibiting a contractor's lien on the property, although Bogard acknowledged he "had heard" from Foster the SBA would not approve a contract without a "no-lien" clause.

Later, however, in April of 1978 or a little before after the plans were completed, Foster told Bogard to go ahead with the remodeling job. He testified that although he had not anticipated beginning without a written contract, "I had a request by her and an okay by her to start the job—the total job" and that "she had told me or requested that I start numerous times before the job was started, at an agreed price," $55,400. He asserted he proceeded on the basis of Foster's oral authorization to do so, and at trial submitted as exhibits various permits dated in June and July of 1978 which Bogard stated he obtained on Foster's behalf and at her authorization.

Bogard rejected a second written contract, tendered by Foster, because it did not adequately describe the parties' oral agreement. He stated the contract did not specifically describe what he was to do. In response, however, he re-tendered the contract he had proffered in December, stating he submitted the document to Foster "after I got a letter, a copy from Mrs. Foster, of the approval from S.B.A." The SBA approval of the loan, dated April 19, 1978, was subject to several conditions set out in the letter, including the following:

"(3) Borrower will not, prior to payment in full of the indebtedness evidence by this Note, without prior written consent of the holder of the Note, pledge, mortgage or otherwise cause or permit to be incumbered in any manner whatsoever any of Borrower's property or assets, whether then owned or thereafter ac-

quired; except by purchase money liens upon property acquired after the date of the Note, and other liens upon such property at the time of the acquisition thereof.

. . . . .

Prior to final disbursement of construction funds, lien waivers must be obtained from all contractors, subcontractors, and any independent workers involved in the construction."

Bogard's second tendered contract, like the other proposed contracts between the parties, was never signed by Bogard or Foster. As noted above, Bogard acknowledged he had generally heard from Foster the SBA would not approve a loan without a "no-lien" provision. He testified he told Foster he would not agree to such a provision. He also testified, however, that at all times after Foster's oral authorization to begin the "total job" based on the parties' discussions, he was ready, willing and able to complete the job, and that his first indication he would not be permitted to complete the job was when he saw someone else doing it. Foster testified she told Bogard "we couldn't do business" when he rejected her tendered contract.

Foster eventually had the job done by a third party. There was evidence the plans ultimately used by Foster to remodel the building were "traced" from plans prepared by Bogard's engineer, John Myer, Jr. In particular, Myer testified on direct examination the final plans were "the same or similar" to the ones he prepared, and on cross-examination he stated he believed someone "traced" his plans because a table for a complicated electrical panel was "exactly the same, word for word, number for number." Bogard also testified in this regard the completed building had had the "same appearance," with a few modifications, as the design submitted by him to Foster.

The contract with the party who ultimately completed the work contained a pro-

vision, described by Foster as a "no-lien" clause, which stated:

> "The final payment shall not be due until the Contractor has delivered to the Owner an Affidavit stating that all bills incurred in the construction of the dwelling have been paid in full, and that no liens have been filed and no liens expected to be filed. The Contractor may, at his option and in lieu of the Affidavit, present to the Owners indemnifying him against any lien."

Bogard testified that based on his experience in construction work since 1954, the project could have been completed by him in less than six months, with a fair and reasonable profit of $10,000. In addition, the evidence also revealed he incurred expenses of approximately $3,852.86 in connection with the preliminary work authorized by Foster. As noted above, the jury awarded Bogard damages of $13,852.86, evidently the sum of these two figures.

*Whether A Contract Was Created*

We first consider Foster's contention the evidence was insufficient to show a valid oral contract. In particular, she argues 1) the parties allegedly had agreed they would not be bound until a contract was reduced to writing, and, therefore, any oral agreement was void; and 2) there was no "meeting of the minds," as evidenced by Bogard's refusal to accept a "no-lien" clause, (despite the fact SBA financing was allegedly a necessary "condition" of any contract between the parties) and as evidenced by the parties' failure to sign any of three written contracts.

In addressing this initial issue we are mindful of the basic appellate standard of review that this Court will not weigh the evidence but will only consider the evidence most favorable to the appellee and all favorable inferences to be drawn therefrom, and will reverse the trial court only if there is no substantial evidence of probative value to support the trial court's finding. *McMahan Construction Co. v. Wegehoft Brothers, Inc.*, (1976) 170 Ind.App. 558, 354 N.E.2d 278, *citing Hidden Valley Lake, Inc. v. Kersey*, (1976) 169 Ind.App. 339, 348 N.E.2d 674. *See also North v. Newlin*, (1981) Ind.App., 416 N.E.2d 144.

In viewing the record of the instant case, summarized in pertinent part above, we find ample evidence supporting the existence of a valid oral contract between Bogard and Foster. Bogard testified that after the parties met at the site and had several subsequent discussions in which the remodeling was discussed "in detail," he arranged to have surveying, drafting and engineering work done at Foster's authorization, and appropriate plans were prepared. For this preliminary work, Bogard recited to Foster an approximate cost of $3,000, and she acknowledged she told him to go ahead with the plans and specifications. Thereafter, subsequent to receiving a written contract from Bogard, Foster told him to start the "total job" for $55,400, and Bogard proceeded on the basis of Foster's oral authorization.

■ Foster correctly observes, *citing International Shoe v. Lacy*, (1944) 114 Ind. App. 641, 53 N.E.2d 636 and *Avery v. Citizen's Loan & Trust Co.*, (1932) 94 Ind.App. 161, 180 N.E. 23, that where the parties agree *they shall not be bound until a contract is reduced to writing*, execution of a written contract is necessary. In the instant case, however, the record does not reveal the jury was required to find the existence of such condition in the parties' oral agreement. Bogard merely testified, as noted above, he had not *anticipated* beginning work without a written contract, and on appeal Foster herself only asserts "the parties *generally agreed* and anticipated that they would sign a written contract, i.e., agree to terms and conditions,[2] before Bogard would commence work." Of course, it is settled law, as expressed, for example,

2. In this regard, we also find somewhat confusing Foster's suggestion that only a written contract may manifest agreement on the "terms and conditions" of the work to be performed.

in *North v. Newlin, supra* at 416 N.E.2d 149:

> " 'the mere fact that parties who orally assent to all the terms of a contract refer to a future contact in writing does not negative the existence of a present and completed oral contract," 6 I.L.E. *Contracts* § 51 at 109, (1958) *citing International Shoe Co. v. Lacy,* (1944) 114 Ind. App. 641, 53 N.E.2d 636, *opinion supplemented,* 116 Ind.App. 78, 61 N.E.2d 85; *Horner v. Daily,* (1922) 77 Ind.App. 378, 133 N.E. 585; and *Featherstone Foundry & Machine Co. v. Criswell,* (1905) 36 Ind. App. 681, 75 N.E. 30. *Moreover, it is clear that 'the intention to make a legal obligation is not necessary for the existence of a contract,'* State ex rel. Appleman v. Lake Circuit Court (1952) 231 Ind. 378, 382–83, 108 N.E.2d 898, 900, *quoting* 1 Williston, Contracts (rev. ed.) § 28 at 61 . . . ." (Emphasis added.)

■ Although it is also true the parties ultimately failed to sign any of the tendered written contracts, this fact does not nullify the earlier agreement or impose any of the later written terms of the binding oral expression. As a matter of contract construction, "[a] valid verbal contract is not destroyed or affected by an attempt or affected by an attempt to execute an invalid written one in its stead . . . . Moreover, a written instrument cannot take the place of and supersede a parol contract until the writing has been mutually adopted by the parties as an instrument embodying the terms of the agreement." 17A C.J.S. *Contracts* § 381 at 450 (1963). Presumably, had the original contract been in writing, Foster would not now contend the mere failure to sign subsequent documents would destroy the validity of the original bargain.

■ Similarly, the evidence does not establish the original, oral agreement between Bogard and Foster was conditioned upon Foster's ability to obtain SBA financing or upon Bogard's assent to a "no-lien" provision. Bogard's testimony revealed Foster told him to start the "total job" after he had sent her a written contract which did not contain a "no-lien" provision, and before financing was in fact obtained from the SBA. In addition, he stated "she had told me or requested that I start numerous times before the job was started." A reasonable inference, based on such evidence, is that the contract was not conditioned either upon SBA financing or upon what Foster described to Bogard as a "no-lien" provision. We find it significant in this regard that the ultimate contract with the third party who completed the job did not in fact contain a provision prohibiting liens against the property, but merely stated, as noted above, the Contractor would submit an affidavit stating no liens had been filed and that the Contractor could at his option indemnify against any lien in lieu of submitting an affidavit. We thus conclude, based on all the evidence appearing in the instant record, the jury could reasonably have concluded there was an oral contract to complete the remodeling for $55,400[3] in addition to the earlier agreement to pay the preliminary costs.

### Damages Under the Contract

■ Our resolution of the contract issue against Foster in essence disposes of her further argument there was insufficient evidence to support the award of $13,852.86 damages to Bogard. We conclude the damages awarded were clearly based on Foster's oral authorization to do the preliminary work and, later, the "total job" (the latter for $55,400), and supporting competent evidence was introduced by Bogard. In particular, he submitted various checks and receipts totaling approximately $3,800 for the preliminary work authorized by Foster, and additionally testified, without ob-

---

**3.** In this regard, *Daniels v. Indiana Trust Co.,* (1944) 222 Ind. 36, 51 N.E.2d 838, cited by Foster, is clearly distinguishable, since there our Supreme Court concluded "[t]here was no written contract, nor is there any direct evidence of an oral contract, since all of those who acted as parties are gone." *Id.* at 48, 51 N.E.2d at 842.

jection, his expected profit on the total job—based on his experience in construction work since 1954—would have been $10,000. Bogard explained such figure was calculated as the difference between the contract price and his anticipated expenses. Based on the record which was made, we cannot agree with Foster's contention on appeal that "[t]he only evidence in the record is the bald assertion by Bogard that he would have made such profit."

*The Trial Court Correctly Permitted United To Amend Its Name In The Complaint*

■ We next consider Foster's assertion the trial court improperly granted United's motion at the conclusion of the evidence to amend its name in the complaint from United Home Improvement Company, Inc. to United Homes, Inc.[4] In this regard, Foster contends the court misinterpreted Ind. Rules of Procedure, Trial Rule 15 because "[t]here is no *express* provision in Trial Rule 15 for substitution of a party plaintiff." (Emphasis added.) That Rule provides in pertinent part:

(B) Amendments to conform to the evidence. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.

(C) Relation back of amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

Assuming *arguendo* Foster has presented a cogent argument on this issue by the mere assertion that T.R. 15 does not expressly refer to modification of a party's name, we note the observation in the Civil Code Study Commission Comments to T.R. 15(B) with respect to this practice. Those comments, which conclude "[t]he rule substantially is in harmony with prior Indiana practice," note that under the former statutory provisions:[5]

" 'After trial and before judgment, the court may, in its discretion and upon such terms as may be deemed proper for the furtherance of justice, *order that any pleading be amended by correcting any mistake in name, description, legal effect, or in any other respect*; or by inserting, striking out, or modifying any material allegation, in order that the pleading may conform to the facts proved, where the amendment will not deprive a party of any substantial right . . . .' " (Emphasis added.)

Civil Code Study Commission Comments, 2 W. Harvey, Indiana Practice at 122–23 (1970). *See also Brendanwood Neighborhood Association Inc. v. Common Council of Lebanon*, (1975) 167 Ind.App. 253, 338 N.E.2d 695 (plaintiff may amend his complaint pursuant to T.R. 15(A) to add new plaintiffs, despite the absence of express language to that effect in the Rule itself); *and see*, with respect to the federal practice, *Hirsch v. Bruchhausen*, (2nd Cir. 1960) 284 F.2d 783 (Fed.R.Civ.Proc. 15, which is substantially similar to our own Rule, interpreted to permit substitution of party de-

---

**4.** The evidence adduced at trial revealed there is no Indiana corporation known as United Home Improvement Company, Inc., and that, as noted above, the proper name is United Homes, Inc.

**5.** Acts, 1881 (Spec. Sess.), ch. 38 § 135, p. 240, as amended.

fendant and relation back to time of filing original complaint.)[6] We believe it is evident from these authorities and from the language of the Rule itself that the "issues" which may be amended pursuant to T.R. 15(B) to conform to the evidence include the identities of the parties to the lawsuit, despite any express language to that effect.

We also cannot agree with Foster's further suggestion the trial abused its discretion under T.R. 15(B) in failing to find she was prejudiced by the mistake regarding United's name. Although it is true, as Foster indicates, United introduced numerous exhibits concerning "monies advanced by the substituted Plaintiff, United Homes, Inc.," the record does not reflect that Foster requested continuances to meet such allegedly "surprise" evidence as permitted by T.R. 15(B), *supra*, nor has Foster demonstrated even on appeal what precise arguments she was prevented from making at trial because she did not have "notice" of United's correct name.[7] *See Ayr-Way Stores, Inc. v. Chitwood,* (1973) 261 Ind. 86, 300 N.E.2d 335, 339, where our Supreme Court concluded in an analogous situation the complaining party offered "no credible showing of any defense of which [it was] deprived" and that "[i]n all candor, it appears that the defendants are alleging prejudice because the plaintiff has made a good case for recovery."

*The Giving of United's Tendered Instruction on Quantum Meruit*

Foster also argues the trial erred in giving United's tendered Instruction No. 6, permitting recovery on a theory of quantum meruit, which stated:

"Ladies and Gentlemen of the Jury, if you find from a preponderance of the evidence that the defendant contracted for the goods and services in question from the plaintiff upon an agreed price, your verdict should be for the value thereof fixed by the contract, if one were proven; but *even if there were no contract price agreed upon and no contract proved, if you find from a preponderance of the evidence that the defendant received certain goods and services from the plaintiff at the defendant's special instance and request, then the plaintiff would be entitled to recover the fair cash value of the said goods and services so provided as established by the evidence.*" (Emphasis added.)

■ Although Foster contends there was no evidence of any "benefit" to her which would support the giving of such instruction, we observe, as noted above, that Bogard's engineer, Myer, testified on cross-examination he believed the plans ultimately used by Foster had been traced from plans which he prepared, and that a complicated electrical panel was "exactly the

---

6. In interpreting our rules of procedure, it is a common practice for courts of this State to look to decisions applying similar provisions under the Federal Rules of Civil Procedure. *E.g., Gumz v. Starke County Farm Bureau Coop Ass'n Inc.,* (1979) Ind., 395 N.E.2d 257; *Bryant v. Lake County Trust Co.,* (1975) 166 Ind.App. 92, 334 N.E.2d 730.

7. In essence, the tenor of Foster's argument is not that she was prevented by lack of notice from making valid arguments against United Homes, Inc., the true party in interest; rather, she merely asserts that if the name had not been amended, she could successfully have challenged the corporate status of what was erroneously referred to as "United Home Improvement Co., Inc." We do not believe this amounts to a showing the admission of evidence bearing the correct corporate name would prejudice Foster "in maintaining . . . [her] action or defense *upon the merits.*" T.R. 15(B), *supra.* (Emphasis added.)

Because of our resolution of the "substitution" issue we also conclude the trial court did not err, as Foster suggests, in giving an instruction stating in part "[t]he Court has determined that the proper Plaintiff is United Homes, Inc.," and in refusing Foster's tendered instruction which stated, in part, "[i]f you find from a fair preponderance of the evidence that the Plaintiff, United Home Improvement Company, Inc., is neither a corporation under the law of the State of Indiana nor does it have an actual and substantial interest in this action, it cannot recover." In this regard we cannot agree with Foster's assertion the trial court's rulings "totally deprived Defendant of the right to raise an issue of law concerning the *very substance* of the case, . . . ." (Emphasis added.)

same, word for word, number for number" as the one he designed. In this regard, Bogard himself testified, as well, that the completed building had essentially the same appearance as contemplated by the design submitted by him to Foster at her request. Thus, it is apparent there was competent evidence of a benefit to Foster which would support the giving of Bogard's quantum meruit instruction,[8] assuming *arguendo* it would not in any event have been harmless error to improperly give a quantum meruit instruction where (as here) the jury's damage award was clearly predicated upon the existence of an oral contract.

*The Refusal to Give Foster's Tendered Instruction No. 2*

Our conclusion the trial court properly gave United's tendered instruction on quantum meruit is essentially dispositive of Foster's further assertion of error that the trial court should have given her Tendered Instruction No. 2, which stated:

> "I instruct you that if you find from a fair preponderance of the evidence in this case that if, prior to the submission of a written unsigned agreement by the plaintiff to the defendant, that the parties were negotiating the terms and conditions of an oral contract to be incorporated into a formal written agreement, and that the said terms and conditions were not met or fulfilled, and the contract was not accepted by the defendant, the plaintiff would not be entitled to recover on the theory of its complaint."

8. Foster's further contention the instruction was improperly given because quantum meruit was not raised in Bogard's complaint is also specious. Although Foster correctly observes the trial judge "refused" to amend the complaint to conform to evidence pertaining to quantum meruit, the judge's express reason for doing so was his determination the *original complaint* properly pleaded this issue. The complaint alleged, *inter alia*, "the plaintiff did use, without defendant's consent and without the consent of the architects and surveyors involved, the architectural and surveying work provided by the plaintiff and for which the plaintiff incurred indebtedness" and that "the defendant . . . willfully and wantonly refused to reimburse the plaintiff for the monies expended in defendant's behalf. . . ." In any event, our courts have also held that "if the evidence

■ Since there was competent, probative evidence pertaining to quantum meruit on which United was entitled to rely, we believe the trial court could correctly have concluded Foster's tendered instruction was misleading because it tended to suggest United could only recover if a contract were proven. A trial court properly rejects misleading and confusing instructions tendered by the parties. *American Optical Co. v. Weidenhamer*, (1980) Ind. App., 404 N.E.2d 606 (transfer pending), *citing, e.g., Arnold v. Parry*, (1977) 173 Ind. App. 300, 363 N.E.2d 1055. Indeed, even assuming the quantum meruit theory had not been presented to the jury, we believe Foster's tendered instruction may be misleading for a variety of other reasons, including its ambiguous, confusing suggestion that recovery would denied where "the contract" was not "accepted" by the defendant (presumably the parties may negotiate more than one contract, oral or written) and where "*said* [negotiated] terms and conditions" are not "met or fulfilled" (in this regard, the instruction erroneously suggests United may not recover merely because Foster did not "fulfill" the contract.) Thus, it is apparent the trial court committed no error in refusing the tendered instruction.

*The Giving of United Instruction No. 4 on Damages*

■ Foster also argues the trial court erred in giving United's Instruction No. 4 on damages, which stated:

introduced at trial supports a theory of recovery . . . that evidence should control," even where the trial court initially denies a motion to amend the pleadings pursuant to T.R. 15(B) and then later implicitly corrects his order by entering judgment based on the unpleaded theory in question. *Urbanational Developers, Inc. v. Shamrock Engineering, Inc.*, (1978) Ind.App., 372 N.E.2d 742, 751–52.

The further, somewhat confusing argument in Foster's brief that the trial court erred in giving the instruction because "a party proceeding upon the theory of express contract cannot recover on the theory of quantum meruit" has been waived by her failure to specifically make such objection to the trial court before submission of the instructions to the jury.

"The Court charges you that a party who has been wrongly deprived of the gains and profits *of an executory contract* may recover as an equivalent and by way of damages, the difference between the *contract price—the amount which he would have earned and been entitled to recover on performance—and the amount which it would have cost him to perform the contract.* In estimating such cost, allowance must be made for every item of cost and expense necessarily attending a full compliance on his part, and in estimating his profits, you will, of course, exclude all such as are merely speculative and conjectural." (Emphasis added.)

At trial, Foster suggested the instruction was misleading because it "deletes" the requirement that the jury find a contract was in existence before a computation of damages is made. We note, however, the settled law that all nonmandatory instructions must be considered together to determine whether the jury was properly instructed, and that all applicable law need not be included in one instruction. *American Optical Co. v. Weidenhamer, supra,* 404 N.E.2d at 622, citing authorities. In the instant case, the court's final instructions included, *inter alia,* Foster's Tendered Instruction No. 5 (as amended),[9] which stated:

"A party seeking to recover on an action on a contract has the burden of establishing the contract and its terms. If the plaintiff in this action, United Home Improvement, Inc., fails to prove by a fair preponderance of the evidence that a contract existed between it and the defendant, and further fails to prove the terms of such contract, it cannot recover

against the defendant Judith Ann Foster on the contract."

Nor do we feel United's Tendered Instruction No. 4 was in itself misleading, since it is apparent it merely permitted the jury to award damages to be measured by the terms of any underlying contract which the jury found had been established.

### The Giving of United's Tendered Instruction No. 5 on Damages

The final error alleged by Foster is that the trial court erred in giving United's Tendered Instruction No. 5, which stated:

"Remote, contingent, uncertain and speculative profits are not proper elements of damages, but the rule has been declared in this state, that where a party employed to do work is prevented from doing it and thereby deprived of the clear and certain and usual profit arising upon such work, that is a proper subject of damages."

▇▇▇▇▇ Although Foster suggests on appeal the giving of this instruction was error because "United was never employed and prevented from doing its work," (emphasis added) we note she did not contend in her objections at trial there was no evidence United was prevented from doing its work.[10] Accordingly, she has waived this second assertion of error, since the trial judge is entitled to have specific, meaningful objections to instructions *before their submission to the jury* to enable him to reexamine his position and correct possible errors or misstatements.[11] *American Optical Co. v. Weidenhamer, supra* at 621, *citing Scott v. Krueger,* (1972) 151 Ind.App. 479, 280 N.E.2d 336; *Conley v. Lothamer,* (1971)

---

**9.** The trial court inserted the words "on the contract" at the end of the tendered instruction in order to preserve United's quantum meruit theory.

**10.** The only objections to the instruction which Foster arguably made at trial were: 1) United erroneously suggests by virtue of the instruction that it "was, in fact, employed to do the work;" 2) the instruction did not inform the jury it must determine a contract did exist before it awards lost profits; and 3) the in-

struction improperly informed the jury it may award lost profits in the absence of a contract.

**11.** We note, however, the record reveals Foster's own statement that she told United they could not do business because he refused to sign her tendered written contract, as well as Bogard's suggestion that a different contractor appeared at the worksite and began the job without Bogard's prior knowledge.

150 Ind.App. 356, 276 N.E.2d 602. Of course, it is further evident—based on our determination there was sufficient evidence showing an oral contract between the parties—that it also was not error to give the instruction for the asserted reason that United was "never employed" to do the job. We therefore conclude Foster has not demonstrated any error with respect to this instruction.

For the foregoing reasons, the decision of the trial court is affirmed.

YOUNG, J., concurs.

CONOVER, J., concurs in result.