**EQUIMART LTD., INC.,**
**Defendant–Appellant,**

v.

**Harrison P. EPPERLY,**
**Plaintiff–Appellee.**

**No. 55A01–8905–CV–177.**

Court of Appeals of Indiana,
First District.

Oct. 30, 1989.

John D. Nell, Richard A. Clark, Wooden McLaughlin & Sterner, Indianapolis, for defendant-appellant.

RATLIFF, Chief Judge.

STATEMENT OF THE CASE

Equimart Ltd., Inc. (Equimart) appeals the Morgan Superior Court's entry of par-

tial summary judgment in favor of Harrison P. Epperly (Epperly). We affirm.

## FACTS

Equimart is an Indiana Corporation. Epperly was one of the founders and was the principal officer of United Brake Systems (UBS). Epperly owned 80% of the common stock of UBS, and Epperly's wife owned the remaining 20%. Epperly decided to sell UBS and, after negotiations with other prospective buyers failed, began negotiations with Equimart sometime in the late Spring of 1986 to sell all the UBS stock to Equimart. On July 31, 1986, Epperly and Equimart executed an agreement entitled "Letter of Intent."

In the Letter of Intent, Equimart and Epperly stated that they would "attempt, in good faith, to negotiate a definitive purchase agreement to be entered into providing for the sale ... of all the stock (the "Final Agreement")." Record at 90. The Letter of Intent set forth that the purchase price of the stock would be at least Twelve Million Dollars ($12,000,000.00), and that the purchase price could be increased in accordance with certain other provisions in the Letter of Intent. The Letter of Intent set forth various other provisions that were to be included in the Final Agreement, such as an employment agreement between Epperly and Equimart, and a non-competition agreement if Epperly's employment with Equimart should terminate for any reason.

The Letter of Intent provided that Equimart was to pay Twenty-five Thousand Dollars ($25,000.00) to Epperly, in consideration of which Epperly agreed that for a period of one hundred twenty (120) days following the date of the letter, he "shall not discuss or negotiate with any other firm or individual for the sale of the stock." Record at 95. The letter also stated that "[s]hould a Final Agreement be entered into by the parties such consideration shall be applied against and thereby reduce the deferred balance of the Purchase Price." *Id.*

The Letter of Intent made specific reference to another agreement to be signed:

"7. In addition to the foregoing, consummation of the transaction here contemplated (Buyer's purchase of the Stock from Seller) will be subject to the execution and delivery of a Final Agreement in a form reasonably satisfactory to the parties and their respective counsel. Such Agreement will contain the customary representations and warranties, ... closing conditions, commercial restrictions upon Buyer and other terms as the parties or their respective counsel may agree."

Record at 96.

After the Letter of Intent was signed, Equimart delivered a check in the amount of Twenty-five Thousand Dollars ($25,000.00) to Epperly pursuant to the agreement. In late October, also pursuant to the agreement, an audited financial statement was prepared that raised questions regarding core bank practices which had the effect of reducing the accounts receivable.[1] Equimart's attempts to secure financing were thus complicated, and Equimart alerted Epperly of this difficulty.

In December, Epperly contacted other persons regarding the sale of UBS. On December 15, 1986, Equimart sent the following letter to Epperly's counsel:

"Enclosed herewith please find an initial unproof and very rough draft Stock Purchase and Redemption Agreement which we have prepared in connection with the contemplated sale.

Walter, PLEASE BE ADVISED THAT THE ENCLOSED DRAFT IS NOT REPRESENTED TO BE FINAL OR BINDING IN ANY RESPECT AND IS SUB-

---

**1.** UBS was a rebuilder of heavy duty brake shoes. Its business was to recondition or rebuild old brake shoes which were returned to UBS. The returned shoes were generally referred to as "brake cores".

UBS maintained records of credits given to customers who returned used brake cores when purchasing reconditioned shoes and credits for customers who had the right to return shoes purchased from UBS. The "core bank" was the term used to describe the record keeping system of UBS for dealing with the brake core returns. Equimart's claims for fraud and malpractice against the third party defendants relate to core bank representations.

JECT TO CHANGE AT THE BEHEST OF OUR CLIENT. The draft is being transmitted, in the interest of time, for your early review and comment only and with a view that you might be apprised of the compilations and disclosures which will be expected by our client from Mr. Epperly.

We hope to furnish each of you a refined draft, along with corollary documents, later today or tomorrow."

Record at 77 (emphasis added). On December 20, 1986, Equimart tendered a second check for $25,000.00 to Epperly, along with a letter stating that the money was "for extension of the period of exclusivity in accordance with ... [the] Letter of Intent ..." Record at 1219. Epperly returned this check to Equimart.[2]

No Final Agreement was ever entered into by Epperly and Equimart, and Epperly sold the assets of UBS to a third party on December 30, 1986. During negotiations with this third party, Equimart represented to Epperly that it would assert a claim of ownership over any proceeds of a sale between Epperly and any third party. Therefore, on December 18, 1986, Epperly filed a complaint against Equimart, seeking a declaratory judgment that Epperly had no obligation or liability to Equimart based on the Letter of Intent. Equimart filed a counterclaim and thirty-party complaint on December 22, 1986, claiming that Epperly had breached the Letter of Intent by entering into negotiations with and selling the assets of UBS to a third party.

On June 10, 1988, Epperly filed a Motion for Partial Summary Judgment, claiming that there was no genuine issue of material fact that the Letter of Intent was merely an agreement to agree and thus created no enforceable rights in Equimart to purchase Epperly's stock. Epperly claimed that his obligation to sell the UBS stock was subject to a second and mutually acceptable Final Agreement and no such Agreement was ever executed. The trial court granted Epperly's motion on April 24, 1989.

On May 3, 1989, Equimart filed its Petition for Certification for Interlocutory Appeal, which the trial court granted on May 7, 1989. On June 16, 1989, we granted permission for Equimart to pursue this Interlocutory Appeal.

## ISSUES

Equimart raises two issues for our review, which we have consolidated into the following issue:

Did the trial court err in finding that there was no genuine issue of material fact that the parties intended not to be bound to buy and sell Epperly's stock until a Final Agreement was executed?

## DISCUSSION AND DECISION

We first note that Epperly has not favored us with an appellee's brief. Therefore, we may reverse upon a showing by Equimart of prima facie error in the trial court's judgment. *Stacey–Rand, Inc. v. J.J. Holman, Inc.* (1988), Ind.App., 527 N.E.2d 726, 727; *In re Marriage of Tucker* (1980), Ind.App., 406 N.E.2d 321, 323.

When reviewing a grant of summary judgment, we use the same standard as that used by the trial court; summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Indiana Rules of Procedure, Trial Rule 56(c); *Jackson v. Warrum* (1989), Ind.App., 535 N.E.2d 1207, 1210; *Seiler v. Grow* (1987), Ind.App., 507 N.E.2d 628, 630, *trans. denied*. In determining if a genuine issue of material fact exists, we construe all matters liberally in favor of the non-moving party; we resolve all doubts in favor of the non-movant and view all facts and inferences therefrom in a light most favorable to the non-movant. *Jackson*, 535 N.E.2d at 1210.

Equimart correctly observes, citing *International Shoe v. Lacy* (1944), 114 Ind. App. 641, 53 N.E.2d 636, and *Foster v. United Home Improvement Company, Inc.* (1981), Ind.App., 428 N.E.2d 1351, that where the parties have agreed to the essential terms of the contract, the fact that some future memorialization may be exe-

---

2. We note that the record before us indicates that the check tendered by Equimart to Epperly was dishonored by Equimart's bank for insufficient funds. Record at 1223.

cuted does not negate the existence of the prior contract. Equimart also acknowledges the well known exception to the rule in *International Shoe,* that the parties to an agreement will not be bound if the parties expressly stated that they did not intend to be bound until a second writing or subsequent formalization was executed. *Foster,* 428 N.E.2d at 1355. However, Equimart claims that no such express intent can be found on the facts of this case, and that the Letter of Intent's references to a Final Agreement are "only evidence of the parties' intent to subsequently finalize or memorialize an agreement and does not affect the initial agreement." Appellant's brief at 17.

We do not agree. The Letter of Intent before us does not contain definite and specific terms sufficient to constitute a valid and enforceable contract for the sale of Epperly's stock. On the contrary, the Letter of Intent stated that the intent of the parties was to *"attempt,* in good faith, *to negotiate* a definitive purchase agreement to be entered into between Buyer and Seller ..." Record at 90 (emphasis added). In addition, the letter made the following statement: "In addition to the foregoing, consummation of the transaction here contemplated ... will be subject to the execution of delivery of a Final Agreement in a form reasonably satisfactory to the parties and their respective counsel." Record at 73.

Equimart's reliance on *State v. Lake Circuit Court* (1952), 231 Ind. 378, 108 N.E.2d 898, is misplaced. In *State,* two parties agreed to dissolve a partnership and signed a memorandum which stated

"that the partners agreed to a dissolution, that the continuing partner should purchase from the retiring partner all of his right, title and interest in the partnership, that 'this short form of memorandum agreement for dissolution be drafted pending the adjustments of all details and the execution of a detailed dissolution agreement.'"

*Id.* at 380–81, 108 N.E.2d at 900. The court stated that construing the agreement as a whole,

"there is nothing in [the agreement] that evidences an intention that the memoran-

dum so signed by the parties was not to be considered a binding contract as it then existed, although the first sentence of Item 6 stated, 'It is agreed that this agreement is a memorandum agreement only and does not include in a detailed manner all the terms of the dissolution agreement subsequently to be negotiated, drafted and executed.' The preceding items contained the promises of the parties, did cover everything necessary for a dissolution agreement, and, in spite of the recital in Item 6, the promises were stated in a detailed manner."

*Id.* Unlike the agreement in *State,* the Letter of Intent between Epperly and Equimart expressly stated that should a purchase agreement be reached, certain terms, as well as others to be later negotiated, were to be included.

Equimart correctly states that the meaning of a written contract must be determined by examination of the entire contract and not by individual portions thereof. *Fort Wayne Cablevision v. Indiana and Michigan Electric Co.* (1983), Ind.App., 443 N.E.2d 863, 865; *Kleen Leen, Inc. v. Mylcraine* (1977), 174 Ind.App. 579, 583, 369 N.E.2d 638, 641. In viewing the Letter of Intent as a whole, we find that it was an agreement for a period of exclusive negotiation, and not a binding sale and purchase agreement. At most, the Letter of Intent was an agreement to agree to buy and sell the stock; as such, under Indiana law, it was illusory and is unenforceable. *County Dept. of Public Welfare of Lake County v. American Federation of State, County and Municipal Employees* (1981), Ind. App., 416 N.E.2d 153, 156.

We find that there is no genuine issue of material fact that the parties did not intend to be bound until a Final Agreement was executed. The trial court did not err in granting summary judgment on this issue.

Affirmed.

ROBERTSON and BAKER, JJ., concur.