**MH EQUITY MANAGING MEMBER, LLC, Appellant–Plaintiff,**

v.

**Debra K. SANDS, Appellee–Defendant.**

No. 49A02–1005–CC–495.

Court of Appeals of Indiana.

Nov. 30, 2010.

Rehearing Denied Jan. 25, 2011.

Richard A. Kempf, Steven C. Shockley, Taft Stettinius & Hollister LLP, Indianapolis, IN, Attorneys for Appellant.

Kevin W. Betz, Sandra L. Blevins, Betz & Associates, Indianapolis, IN, Attorneys for Appellee.

Daniel R. Shulman, Gray Plant Mooty Mooty & Bennett, P.A., Minneapolis, MN, Temporary Admission.

## OPINION

BAILEY, Judge.

### Case Summary

MH Equity Managing Member, LLC ("Managing Member") appeals an order of the Marion County Superior Court enforcing a settlement agreement between Managing Member and Debra K. Sands ("Sands") providing for dismissal with prejudice of a complaint alleging that Sands had breached a fiduciary duty in performing services for MH Private Equity Fund, LLC ("MH Equity"). We affirm.

### Issues

Managing Member presents two issues for review:

I. Whether the trial court erroneously extended comity to a Wisconsin court decision finding that the parties had reached a valid settlement agreement; and

II. Whether the trial court erred in determining that a valid settlement agreement was entered into by the parties and enforcing its term of dismissal.

## Facts and Procedural History

On November 3, 2008, Sands, who is a Wisconsin resident, filed a complaint in the Eau Claire County Circuit Court of Wisconsin against Menard, Inc., Menard Thoroughbreds, Inc., John Menard, Jr. (the founder and majority owner of the home improvement chain Menard's), MH Equity (an Indiana-based investment fund), and Managing Member (an Indiana limited liability company managing MH Equity). Menard, Inc. and John Menard, Jr. are the majority shareholders of MH Equity, with Managing Member owing twenty percent. Sands' complaint sought an award of a portion of the assets accumulated during her cohabitation with John Menard, Jr., including a twenty-percent interest in MH Equity.

On January 30, 2009, Managing Member filed a complaint against Sands in the Marion County Superior Court. The complaint alleged that Sands had breached a fiduciary duty by serving as the attorney for MH Equity and Managing Member from September 2005 through January 2007 and accepting $170,000 for legal services at a time when, unbeknownst to MH Equity, Sands was not licensed to practice law in Indiana. The complaint sought disgorgement of the attorney's fees.

On November 23, 2009, Steven Shockley ("Shockley"), counsel for MH Equity and Managing Member, contacted Daniel Shulman ("Shulman"), counsel for Sands. Shockley proposed that Sands dismiss with prejudice her claims in the Wisconsin case in exchange for Managing Member dismissing with prejudice its claim against Sands in the Indiana case.

A series of e-mail communications ensued. On November 24, 2009, Shockley wrote to Shulman:

Attached is the motion for summary judgment I intend to file tomorrow (Wednesday) afternoon if we are unable to agree on the resolution I offered yesterday (dismissal of Ms. Sands' claims against MH Equity in the Wisconsin case in exchange for dismissal of MH Equity Managing Member's claims against Ms. Sands in its Indiana case). I am confident Judge Lenz will grant our motion—Ms. Sands was paid $170,000 for her services to MH, and if Mr. Menard promised her more, she can enforce that promise directly against him. There is simply no reason for MH Equity to continue as a defendant in the Wisconsin case. As I mentioned yesterday, my client wishes to fix its costs of litigation now. Please respond to my offer before Noon on Wednesday, November 25.

(App.43.) Shulman responded:

Steve, we accept your offer. I think dismissals with prejudice and mutual releases are in order. Do you want to draft them or should we?

(App.43.) Shockley agreed that a release was desirable, writing to Shulman:

Dan—Thanks for your response. I will prepare for your review a stipulation for dismissal of Managing Member's lawsuit here in Indiana. If you would prepare a mutual release and a stip for dismissal of MH Equity in the Wisconsin lawsuit for me to review, I would appreciate it.

(App.42.) Shulman responded: "Jeremy [Johnson] will do that and get it to you as quickly as possible." (App.42.) Shockley provided to Sands' counsel a stipulation and proposed order for dismissal of the Indiana claim against Sands, with a final notation, "I look forward to receiving your docs tomorrow." (App.41.)

Johnson e-mailed a draft stipulation that did not include a signature block for counsel for John Menard, Jr. or the Menard defendants. On November 28, 2009, Shockley took issue with the form of the

stipulation for dismissal and proposed order, while re-iterating that a release was contemplated. He wrote to Shulman and Johnson:

Jeremy and Dan—I have some issues with your Stipulation and Order. My proposed revisions are attached, and the reasons for my revisions are as follows. First, I assume Wisconsin Rule 807.05, like FRCP 41(a)(1)(A)(ii) and its counterpart in the Indiana Trial Rules, requires a stipulation for dismissal to be signed by "all parties who have appeared," so I have added a signature line for Web Hart as counsel for the Menard Defendants. Web does not represent MH, as it appeared in your draft.

Second, I do not agree that a Stipulation like this is an appropriate place to attempt to release claims by and against affiliates of the parties. That should be done in a separate release agreement, which you agreed to draft. (See the attached email.)

Finally, to be clear, our agreement is limited to the dismissal and release of Sands' claims against MH in the Wisconsin case and MH Managing Member's claims against Sands in the Marion County, Indiana case. (See the attached email). Our agreement does not affect the lawsuit brought by Helen HCI, LLC against Sands in Boone County, Indiana. Therefore, there should be no language in any stipulation or release that could be construed to dismiss or release any claims by Helen HCI, LLC. The language in your draft Stipulation and Order purporting to extend to claims of "parties or entities identified in interest" with "agents ... [and] representatives" of MH is unacceptable, because the member and manager of Helen HCI, LLC, Rollin Dick, could be considered an agent/representative of MH. It may be necessary to expressly carve out the claims if [sic] Helen HCI, LLC in the release agreement.

Please review the attached and let me know on Monday if they are acceptable. Also, please let me know when I can expect to have a draft of the release agreement.

(App.45.) Sands' counsel provided a proposed general release, which Shockley "red-lined." (App.48.) On December 1, 2009, Shockley wrote to Johnson, with a copy to Shulman: "My clients have approved the redline I sent you earlier this afternoon." (App.48.) Approximately two hours later, Johnson responded:

Steve, I accepted all of your revisions to the Settlement Agreement and just cleaned up the formatting. Attached is the final Agreement. With respect to the Stipulation, WI R. Civ. P. 807.05 doesn't require all parties to execute.

(App.151.) On December 2, 2009, Shockley (having been instructed by MH Equity CEO Stephen Hilbert to withdraw from settlement negotiations if not concluded) wrote to Shulman and Johnson, expressing an intention to proceed with the lawsuit as opposed to dismissal:

The proposed Settlement and Release Agreement between Debra Sands and MH Equity and MH Managing Member is conditioned on the filing of mutual stipulations for dismissal with prejudice of Sands' claims against MH in the Wisconsin case and of Managing Member's claims against Sands in the Indiana case. When you originally tendered your draft stipulation for the Wisconsin case on November 27, I objected because (among other things), the form of stipulation did not include a signature block for counsel for the Menard defendants. On November 28, I sent you a revised draft of the Wisconsin stipulation that included a signature block for the Menard defendants, because it is

required by the Wisconsin rules, and because the Menard defendants' consent to the dismissal of MH is a material term of the settlement for my clients. That draft was the document referenced as Exhibit A in the redlined version of the Settlement and Release Agreement I sent you on December 1.

Later on December 1, you sent me another revised stipulation for dismissal that removed the signature block for the Menard defendants' counsel. In your transmittal email, you told me Wisconsin Rule 805.07 does not require all parties to execute the stipulation for dismissal. Rule 805.07 does not govern stipulations for the dismissal of parties from an action. Such stipulations are governed by Rule 805.04, which requires a "stipulation of dismissal signed by all parties who have appeared in the action." Even if 805.07 did govern, the Menard defendants' consent to the dismissal of MH from the Wisconsin action is material to my client's agreement to settle with Sands, as should have been clear from the draft stipulation I sent on November 28.

I have learned today that counsel for the Menard defendants will not consent to the dismissal of MH from the Wisconsin action or sign a stipulation for such dismissal. Accordingly, a material condition to MH's settlement agreement with Sands fails . . . .

(App.56.) On December 8, 2009, John Richie, one of the attorneys for Sands, contacted Webster Hart, counsel for John Menard, Jr. and Menard, Inc. Hart advised Richie that he was not willing to sign a stipulation of dismissal "that did not involve his client." (App.59.) On December 11, 2009, Sands filed a motion to enforce settlement in the Wisconsin action. The Wisconsin court conducted a hearing on January 7, 2010.

On February 10, 2010, the Wisconsin court entered an order of enforcement, which provided in pertinent part:

> On or about November 24, 2009, Sands, MH Equity, and Managing Member, by and through their respective counsel, entered into a binding settlement agreement whereby Sands agreed to dismiss with prejudice her claims against MH Equity in the above-captioned proceeding in exchange for the dismissal with prejudice of claims brought by Managing Member against Sands in litigation pending in the Superior Court of Marion County, Indiana, Case No. 49D100901 CC 004792 (the "Marion County Action").

> On the basis of the foregoing finding of fact,

> IT IS HEREBY ORDERED THAT:

> 1.  Sands' claims against MH Equity in the above-captioned proceeding are hereby dismissed with prejudice.

> 2.  If Sands files a motion to enforce the settlement agreement against Managing Member in the Marion County Action and the Court in that Action denies Sands' motion, then Sands may file a motion for reconsideration of this Order and reinstatement of her claims against MH Equity in the above-captioned proceeding.

(App.57–58.) Sands moved the Marion County Superior Court to enforce settlement in the Indiana case. On May 5, 2010, the trial court entered an order providing in relevant part:

> Defendant sufficiently shows an enforceable settlement agreement.

> The Wisconsin judgment enforcing the settlement agreement should be respected as a matter of comity here.

> Accordingly, the Court ORDERS that the Settlement Agreement should be,

and hereby is, enforced, and Plaintiff's claims against Defendant are HEREBY DISMISSED, with prejudice.

(App.10–11.) This appeal ensued.

## Discussion and Decision

### I. Comity

■ Managing Member complains that the trial court improperly exercised comity with respect to the Wisconsin trial court decision. Sands responds that Managing Member may not, because of the principles of collateral estoppel, attack a finding of the Wisconsin trial court.

■ Collateral estoppel, or issue preclusion, bars the subsequent litigation of a fact or issue, which was necessarily adjudicated in a former lawsuit between the same parties or their privies. *Shell Oil Co. v. Meyer*, 705 N.E.2d 962, 968 (Ind. 1998). Asserting that the Wisconsin trial court had necessarily determined that a binding and enforceable agreement had been reached, Sands urged the Indiana trial court to find Managing Member collaterally estopped from claiming otherwise in Indiana. The Indiana trial court did not specifically address Managing Member's contention of collateral estoppel, but purportedly decided to extend "comity."[1]

■ Under comity, an Indiana court may dismiss a case in order to respect proceedings final or pending in another state's court. *American Economy Ins. Co. v. Felts*, 759 N.E.2d 649, 660 (Ind.Ct. App.2001). Such dismissal is not a determination on the merits. *Id.* Comity is not a constitutional requirement to give full faith and credit to the law of a sister state; rather, it is a rule of convenience and courtesy. *Id.* at 660. Indiana courts *may*, based upon principles of comity, decline to interfere with proceedings in another state out of deference and goodwill. *George S. May Int'l Co. v. King*, 629 N.E.2d 257, 260 (Ind.Ct.App.1994) (emphasis added), *trans. denied.* Comity is important in avoiding conflicting results and in discouraging repetitive litigation of the same question. *Id.* However, comity is not a mandatory rule of law. *Id.*

Here, neither party argued that an action was pending in Wisconsin or moved for dismissal of the Indiana enforcement action under principles of comity. Moreover, while the trial court purportedly found comity appropriate, the court actually addressed the merits of the matter before it, finding that an enforceable settlement agreement had been reached.[2] The

---

1. Although the trial court did not express its reasoning in declining to reach Sands' collateral estoppel argument, it appears that the reason is the Wisconsin court's specific limitation of its order to the dismissal of the Wisconsin claim against MH Equity. The Wisconsin court made a factual finding that a settlement agreement had been reached, but specifically declined to exercise jurisdiction over dismissal of the Indiana claim against Sands. Thus, there had been no determination in the Wisconsin court as to the enforceability of the provision for dismissal of the Indiana claim. The Wisconsin court expressly left this for disposition in the Indiana court. "Collateral estoppel does not extend to matters that were not expressly adjudicated or to matters that can be inferred from the prior adjudication only by argument." *In re Com-*

*mitment of Heald*, 785 N.E.2d 605, 611 (Ind. Ct.App.2003), *trans. denied.*

2. In so doing, the trial court distinguished the principal case relied upon by MH Equity, *Janky v. Batistatos*, 559 F.Supp.2d 923 (N.D.Ind.2008). While acknowledging that the federal case is not controlling authority, MH Equity strenuously argued that it presented a persuasive example of the application of Indiana law to find that an "agreement to agree" was reached as opposed to a settlement agreement. *Id.* at 930. We, like the trial court, find *Janky* readily distinguishable from the instant case. *Janky* involved an offer to settle followed by a written mutual global release draft that added additional and material terms, specifically, that Janky post a $100,000 bond to secure future claims, issue a

Indiana court went on to enforce the provision for dismissal of the claim against Sands pending in Indiana, a matter that the Wisconsin court had expressly left for disposition in Indiana. Managing Member has not demonstrated entitlement to reversal because of the trial court's reference to comity.

## II.  Contract

■ Managing Partner argues that no contract was formed because the proposal for settlement by respective dismissals was met not with a "mirror-image" acceptance but rather with a counteroffer including an additional term—the execution of mutual releases. According to Managing Partner, the discourse between Sands' counsel and Managing Partner's counsel at most constitutes "an unenforceable agreement to agree." Appellant's Brief at 25.

■ Indiana strongly favors settlement agreements and if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement. *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind.2003). Settlement agreements are governed by the same general principles of contract law as other agreements. *Id.* Generally, a settlement agreement is not required to be in writing. *Estate of Skalka v. Skalka*, 751 N.E.2d 769, 771 (Ind.Ct.App.2001).

■ The existence of a contract is a question of law. *Batchelor v. Batchelor*, 853 N.E.2d 162, 165 (Ind.Ct.App.2006). The basic requirements are offer, acceptance, consideration, and "a meeting of the minds of the contracting parties." *Id.* The intention of the parties to a contract is a factual matter which must be determined from all the circumstances. *Zimmerman*

*v. McColley*, 826 N.E.2d 71, 76 (Ind.Ct. App.2005).

■ To determine whether a contract is enforceable, there are two interrelated areas that must be considered: "intent to be bound and definiteness of term." *Wolvos v. Meyer*, 668 N.E.2d 671, 675 (Ind.1996). "[O]nly essential terms need be included in order to render a contract enforceable." *Id.* at 676. Whether the parties intended to execute a subsequent written document is relevant to the determination of intent to be bound. *Illiana Surgery & Medical Center, LLC. v. STG Funding, Inc.*, 824 N.E.2d 388, 394 (Ind. Ct.App.2005). Parties may make an enforceable contract which obligates them to execute a subsequent final written agreement. *Wolvos*, 668 N.E.2d at 674. However, it is necessary that agreement shall have been expressed on all essential terms that are to be incorporated in the document. *Id.* In other words, the document is understood to be a mere memorial of the agreement already reached and may not contain a material term that is not already agreed on. *Id.*

In this case, the parties agreed to the essential terms resolving the issues between the parties: dismissal with prejudice of the Wisconsin claim against MH Equity and dismissal with prejudice of the Indiana claim against Sands. Initially, on November 23 and 24, 2009, counsel for MH Equity and Managing Member proposed to settle Managing Member's claim against Sands and Sands' claim against MH Equity by filing dismissals. On November 24, 2009, counsel for Sands agreed to dismissal and proposed the execution of releases. Although this communication did not "mirror" the "dismissal" language and thus

---

press release admitting error, convey ownership of the disputed song, and pay all court-

ordered sanctions. *Id.* at 928.

proposed a new term, MH Equity's counsel readily agreed to the execution of releases, advising Sands' counsel to draft such, and in later communication making plain reference to the contemplation of releases. While not wavering from the expectation of dismissals with prejudice and the execution of releases, MH Equity's counsel identified a dispute with regard to the inclusion of signature lines for the Menard defendants on a stipulation of dismissal.

Two trial courts have made the factual determination that Managing Member and Sands expressed assent to the material term of dismissal with prejudice of the Indiana action against Sands and the Wisconsin action against MH Equity. The communications of the parties' attorneys contemplated the execution of mutual releases; thus, they contemplated a subsequent document. However, there is no evidence that the release document would have modified any substantial term of the settlement agreement.

That a disagreement arose as to whether a particular Wisconsin trial rule was applicable and required signature lines for all parties originally named in a complaint is inconsequential.[3] The Menard defendants were not a party to the settlement agreement between Managing Member, MH Equity, and Sands; there had been no representation made as to the Menard defendants' participation in a settlement agreement. As to the settlement agreement, they were non-parties.

In essence, the parties entered into a binding contract which required the subsequent execution of a document memorializing their agreement. There is no uncertainty as to any substantial term of the settlement contract. "A court will not find that a contract is so uncertain as to preclude specific enforcement where a reasonable and logical interpretation will render the contract valid." *Conwell v. Gray Loon Outdoor Marketing Group, Inc.,* 906 N.E.2d 805, 813 (Ind.2009).

The trial court did not err in finding that an enforceable settlement agreement existed. The complaint against Sands in the Marion County Superior Court was properly dismissed.

Affirmed.

RILEY, J., and KIRSCH, J., concur.

---

**3.** We express no opinion on the applicability of the Wisconsin trial rule cited in Shockley's e-mail in reference to the necessity of signatures from each party having appeared in the action. We merely observe that the Wisconsin court dismissed the Wisconsin action without signatures from John Menard, Jr. and the Menard defendants.