**Dennis BLOCK, Appellant–Plaintiff,**

**v.**

**Mark MAGURA, Appellee–Defendant.**

No. 64A05–1012–PL–752.

Court of Appeals of Indiana.

May 31, 2011.

Kevin E. Steele, Todd A. Etzler, Burke Costanza & Cuppy LLP, Valparaiso, IN, Attorneys for Appellant.

Scott S. Morrisson, Krieg DeVault, LLP, Carmel, IN, Steven P. Lammers, Krieg DeVault, LLP, Schererville, IN, Attorneys for Appellee.

**OPINION**

ROBB, Chief Judge.

*Case Summary and Issues*

Dennis Block and Mark Magura executed a letter of intent that Magura would purchase Block's interest in a partnership. Magura did not complete the purchase, Block filed suit, and the trial court granted summary judgment to Magura and denied summary judgment to Block on the issue of whether the parties' letter of intent creates an enforceable contract. Block appeals and raises a single issue which we restate as two: whether the trial court erred when it 1) granted Magura summary judgment and 2) denied Block summary judgment. Concluding the letter of intent is an enforceable contract because it contains the essential terms of the parties' agreement and expresses their intent to be bound, we reverse and remand.

*Facts and Procedural History*

The following facts are not in dispute. In September of 1988, Block and others formed the CRH & B Partnership (the "Partnership"). In February of 1989, others including Magura were admitted as partners. Current ownership of the Partnership is divided among Block (35 percent), Magura (20 percent), and five other partners. The Partnership owns a building in Valparaiso, Indiana, with office space leased to some of the partners, including Block and Magura. Until he retired in 2008, Block used his office space to practice oral and maxillofacial surgery;

currently he subleases the space to another doctor who pays rent to the Partnership. Magura continues to use his office space to practice endodontics.

The Partnership Agreement provides each partner a right of first refusal whereby "no Partner may sell, assign, transfer, encumber, or otherwise dispose of any interest in the Partnership, without first offering his interest therein to the other Partners upon the same terms...." Appellant's Appendix at 12. The Partnership Agreement also provides that the partners "shall have equal rights in the management and conduct of the Partnership investments and activities," subject to authority of the Manager of the Partnership to direct its "ministerial acts" and "usual daily business affairs." *Id.* at 10.

In September of 2007, Block approached Magura and discussed selling his partnership interest to Magura. In May of 2009, Block again approached Magura and they discussed the sale of Block's partnership interest.

Block then drafted and presented to Magura the following document ("Letter of Intent"), which both signed on May 21, 2009:

**Re:** *Letter of Intent to Purchase Interest in CRH & B Partnership*

Dear Dr. Block:

This Letter of Intent is delivered to set forth the terms and conditions of the acquisition by **Dr. Mark Magura,** of the total ownership interest of **Dr. Dennis Block** in **CRH & B Partnership.** This Letter of Intent is intended to allow the parties to confirm the business terms in contemplation of a transaction that both parties are willing to complete.

**Assets subject to sale:**

Thirty–Five percent (35%) ownership interest of Dr. Block in **CRH & B Partnership,** which represents the total ownership interest of Dr. Block in **CRH & B Partnership.**

**Condition of assets:**

**CRH & B Partnership** owns a commercial building at **911 Wall Street in Valparaiso,** which is subject to certain commercial leases. As of the execution of this Letter of Intent, Dr. Block holds a 35% ownership interest and Dr. Magura owns a 20% ownership interest. Dr. Magura is familiar with the Partnership Agreement, the arrangement between the Partners, the status of the leases, and the condition of the commercial building. Dr. Magura will accept Dr. Block's ownership interest "as-is", free of all liens, encumbrances, or limitations on ownership, except as provided in the Partnership Agreement.

**Purchase Price for Assets:**

The purchase price is **$600,000.**

\* \* \* [1]

**Formal Agreement:**

Pursuant to Section 9.01 of the Partnership Agreement of CRH & B Partnership, no assignment, transfer, sale, encumbrance, or other disposition of any ownership interest is allowed "without first offering [the ownership interest] to the other Partners." After written notification of the proposed sale, the other Partners have 45 days to either waive any interest in the proposed sale or exercise their right to complete the transaction on the same terms. **To the extent that an option is exercised by one or more Partners (except solely by**

---

1. The Letter of Intent as typewritten included a non-competition clause restricting Dr. Block's practice of dentistry, but this clause was marked out and the designated evidence indicates the marking out occurred before or at the time the parties signed the Letter of Intent.

Dr. Magura), **this Letter of Intent shall be deemed void.**

A formal agreement (incorporating the terms of this Letter of Intent) will be promptly prepared by Dr. Magura and submitted to Dr. Block within 5 days after acceptance of this Letter of Intent.

Offer made on this 21 day of May, 2009 by:

[Magura's signature]

**Dr. Mark Magura**

Offer accepted on this 21 day of May, 2009 by:

[Block's signature]

**Dr. Block**

*Id.* at 26–27.

Each of the five other partners was provided with, and signed on May 22, 2009, a notice of the Letter of Intent. None of the other partners exercised their right of first refusal or otherwise objected to Magura's purchase of Block's partnership interest.

On Sunday, July 12, 2009, Block wrote Magura the following email:

> The end of this week is very busy for me.... Thus, I would like to take care of our business prior to that. If you can call me as early as possible tomorrow, I can have [attorney] Patrick draw up the document. I would like to shoot for Tuesday (anytime) to get things signed. Also, Patrick asked how we plan to handle the $ in the CHRB [sic] accounts that would be due to me. My preference would be for you to write me a check for this amount, but you might have an alternate option? Let me know.

*Id.* at 152. At some later point, Block through his attorney demanded that Magura provide a formal written agreement to confirm the purchase. Magura did not prepare such an agreement and has not paid for or otherwise taken steps to complete the purchase of Block's partnership interest.

On October 13, 2009, Block filed his complaint against Magura for breach of contract. The parties filed cross-motions for summary judgment. Following a hearing, the trial court granted Magura's motion for summary judgment and denied Block's motion for summary judgment, concluding that "the letter of intent at issue in this cause does not contain sufficient language to make it enforceable as a contract." *Id.* at 4. Block now appeals.

*Discussion and Decision*

I. Standard of Review

We review the grant or denial of summary judgment de novo. *Tri–Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997, 1001 (Ind.2009). We apply the same standard as the trial court: summary judgment is proper if the designated evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269–70 (Ind.2009). In making this determination, we construe the evidence in a light most favorable to the non-moving party and resolve all doubts as to the existence of a genuine factual issue against the moving party. *N. Ind. Pub. Serv. Co. v. Bloom*, 847 N.E.2d 175, 180 (Ind.2006). The fact the parties have filed cross-motions for summary judgment does not alter our standard of review, as we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *T–3 Martinsville, LLC v. U.S. Holding, LLC*, 911 N.E.2d 100, 109 (Ind.Ct.App.2009), *trans. denied.*

II. Letter of Intent

■ Both parties' arguments center on whether the Letter of Intent they execut-

ed creates an enforceable contract for the sale of Block's interest in the Partnership. Neither party points to any material facts in dispute, and we note that the existence of a contract is a question of law. *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.,* 906 N.E.2d 805, 813 (Ind.2009).

## A. Definiteness of Terms

■ In *Conwell,* our supreme court restated the requirements for an enforceable contract at common law:

> To be valid and enforceable, a contract must be reasonably definite and certain. All that is required to render a contract enforceable is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom; absolute certainty in all terms is not required. Only essential terms need be included to render a contract enforceable. Thus, where any essential element is omitted from a contract, or is left obscure or undefined, so as to leave the intention of the parties uncertain as to any substantial term of the contract, the contract may not be specifically enforced. A court will not find that a contract is so uncertain as to preclude specific enforcement where a reasonable and logical interpretation will render the contract valid.

*Id.* (citations omitted).

Initially we note that the parties' Letter of Intent specifies definitely what was to be purchased (Block's entire 35–percent interest in the Partnership), by whom (Magura), the purchase price ($600,000), and the condition of the asset (free of all liens, encumbrances, or limitations not specified in the Partnership Agreement). Yet Magura argues the Letter of Intent lacks sufficiently definite and certain terms to create an enforceable contract, and points to its silence regarding such matters as when the sale was to occur and close, how the ownership interest was to be transferred, how the purchase price was to be paid, and whether the purchase price was subject to financing.

As for the "when" of the purchase, such terms were incorporated from the Partnership Agreement which the Letter of Intent specifically referenced. The Partnership Agreement provides that once the other partners are given notice of a transaction, they have forty-five days to exercise their right of first refusal, and if that right is not exercised, the selling partner has ninety days after expiration of the forty-five day period in which to consummate the transaction. We have stated that "all applicable law in force at the time an agreement is made impliedly forms a part of the agreement," *Johnson v. Sprague,* 614 N.E.2d 585, 589 (Ind.Ct.App.1993), which here includes the legal obligations of Block and Magura as partners to abide by the Partnership Agreement as to the timing of the sale. Thus, the Partnership Agreement implied a 135–day period in which the sale of Block's partnership interest would proceed to closing, as distinct from the five-day period set forth in the Letter of Intent for preparing and submitting a memorandum of the transaction.

Magura notes the absence of a number of terms relating to business affairs of the Partnership, such as what distributions would be made from Partnership funds, how maintenance and repairs to the Partnership property would be handled, and how disputed issues involving past-due rent, common area maintenance, and accounts receivable would be resolved. However, such matters could not properly be decided by an agreement between two partners, and in fact by the terms of the Partnership Agreement required a majority vote or other consent of all the partners. Appellant's App. at 8–9 ("Distributions from the Partnership to the respective

Partners shall be made ... as may be determined by an unanimous vote of the Partners...."); *id.* at 10 ("Control of the Partnership and all of its affairs shall be in the Partners, who shall have equal rights in the management and conduct of the Partnership investments and activities.").

Thus, to the extent more terms were not included in the Letter of Intent, they were either irrelevant to the sale of Block's partnership interest or, even if customary or desirable, inessential to enforcement of the agreement. The present case is akin to *Illiana Surgery & Med. Center, LLC v. STG Funding, Inc.*, 824 N.E.2d 388 (Ind. Ct.App.2005). In that case, a contract was sufficiently definite to enforce when it specified a promise by the medical center to pay STG a 0.5 percent commission, due at closing, should STG acquire a commitment for the medical center's financing from a reputable bank or lender. We concluded the contract contained all essential terms even though it did not set out, for instance, the manner of payment. *Id.* at 398–99. Similarly in *Johnson*, 614 N.E.2d at 590, we concluded the parties' writings created an enforceable contract for the sale of real estate when they identified the parties, the real estate, the purchase price, and the closing date; other terms customary in real estate transactions were not essential to an enforceable contract. Likewise here, the parties' agreement specifies the Partnership interest to be purchased, by and from whom, the purchase price, the condition of the asset, and the timing of the sale. These are all of the essential terms for an enforceable contract.

### B. Intent to Be Bound

 Next, Magura argues that the Letter of Intent shows the parties did not intend to be bound until a subsequent formal agreement was prepared and executed within five days, as the Letter of Intent required. It is well settled that "a mere agreement to agree at some future time is not enforceable." *Wolvos v. Meyer,* 668 N.E.2d 671, 674 (Ind.1996). "Nevertheless, parties may make an enforceable contract which obligates them to execute a subsequent final written agreement." *Id.* It is necessary that agreement shall have been expressed on all essential terms, such that the final document is understood to be a mere memorial of the agreement already reached and may not contain a material term that is not already agreed upon. *Id.* at 674–75; *see Int'l Shoe Co. v. Lacy,* 114 Ind.App. 641, 645–46, 53 N.E.2d 636, 638 (1944) ("There is no binding contract where, although its terms have been orally agreed upon, the parties have also agreed that they shall not be bound until the same shall have been reduced to writing, but where they assent to all of its terms, the mere reference to a future contract in writing will not negative the existence of a present and completed one.") (citation omitted). Thus, we consider the parties' "intent to be bound" as a question separate from but related to the definiteness of terms. *Wolvos,* 668 N.E.2d at 675 (quotation omitted).

In *Equimart Ltd., Inc. v. Epperly,* 545 N.E.2d 595 (Ind.Ct.App.1989), we considered a letter of intent that stated the parties would "*attempt,* in good faith, *to negotiate* a definitive purchase agreement" for the sale of stock. *Id.* at 598 (emphasis in original). The letter also stated that "consummation of the transaction here contemplated ... will be subject to the execution of delivery of a Final Agreement in a form reasonably satisfactory to the parties and their respective counsel." *Id.* Such language indicated the parties had merely an "agreement to agree" requiring a period of exclusive negotiation, not a binding purchase contract. *Id.; see also Empro Mfg. Co., Inc. v. Ball–Co Mfg.,*

*Inc.*, 870 F.2d 423, 425 (7th Cir.1989) (noting that language providing a transaction is "subject to" a future definitive agreement generally indicates the parties' intent to be bound only upon execution of the future agreement).

Here, unlike in *Equimart*, the parties' Letter of Intent does not refer to future negotiations or use conditional, contingent language. Neither does it imply that the subsequent formal agreement could include new material terms. Rather, it states the subsequent formal agreement "will" incorporate "the terms of this Letter of Intent," not these and other terms. Appellant's App. at 27. Put differently, the Letter of Intent states it is to "confirm" the terms of the purchase. *Id.* at 26. In addition, it states the parties presently "are willing to complete" the purchase and uses the terms "[o]fffer made" and "accepted" to denote the consequence of the parties' signatures. *Id.* at 26–27. The language as a whole indicates the parties' intent to be bound, such that the requirement to execute a formal memorandum of their agreement within five days was not a condition precedent to enforceability of the agreement.[2]

## C.  Other Arguments

■ Magura additionally argues that Block's conduct after executing the Letter of Intent is inconsistent with an intent to be bound and estops Block from arguing otherwise. Assuming for the sake of argument that Block's subsequent conduct is relevant, it is not directly inconsistent with an understanding that Block and Magura had a binding agreement. Block participated in an email discussion of Magura's and partner Ken Hyde's July 4, 2009 offer to "purchase the entire building from CRH & B Partnership for $1.2 million." Appellant's App. at 150. Yet thereafter, on July 12, 2009, Block emailed Magura and stated his desire to "take care of our business" by having "the document" prepared and signed within two to three days. *Id.* at 152. Further, Magura does not point to any affirmative representation by Block that the Letter of Intent was not a binding contract, and as a result, neither equitable nor judicial estoppel applies. *See Morgan County Hosp. v. Upham*, 884 N.E.2d 275, 280 (Ind.Ct.App.2008) (stating judicial estoppel seeks to prevent a litigant from asserting a position inconsistent with one asserted in the same or a previous proceeding, and that it "only applies to intentional misrepresentation") (quotation omitted), *trans. denied; Wabash Grain, Inc. v. Smith*, 700 N.E.2d 234, 237 (Ind.Ct.App. 1998) (stating that an element of equitable estoppel is a party's representation or concealment of a material fact), *trans. denied.*

Finally, while we do not agree with Magura's sweeping characterizations that "letters of intent are not normally enforceable" and "Letters of Intent are not valid contracts under Indiana law," Brief of Appellee at 10 (emphasis omitted), neither do

---

**2.** While in his affidavit Magura averred he did not intend to be bound by the Letter of Intent unless and until a formal agreement was subsequently executed, Magura's subjective understanding in that regard is insufficient to create a genuine issue of fact because intent to be bound is measured objectively, by the parties' words and conduct, not their subjective state of mind. *Real Estate Support Servs., Inc. v. Nauman*, 644 N.E.2d 907, 910 (Ind.Ct.App.1994) ("[T]he intent relevant in contract matters is not the parties' subjective intents but their outward manifestation of it...."), *trans. denied; see Empro Mfg. Co.*, 870 F.2d at 425 ("[I]f intent were wholly subjective there would be no parol evidence rule, no contract case could be decided without a jury trial, and no one could know the effect of a commercial transaction until years after the documents were inked.... Contract law gives effect to the parties' wishes, but they must express these openly. Put differently, intent' in contract law is objective rather than subjective....").

we imply that the opposite is true. As the above discussion illustrates, it is the substance of an agreement that controls whether it is enforceable, not the title of a document as a letter of intent or something else. While letters of intent can be enforceable contracts, it is a question depending on the facts of each case whether sufficient terms and language are included. Given the undisputed facts of this case, we conclude as a matter of law that the parties' Letter of Intent is enforceable because it contains the essential terms of the transaction and expresses the parties' intent to be bound notwithstanding the obligation to execute a subsequent more formal agreement.[3]

For the foregoing reasons, we conclude the trial court erred in entering summary judgment in favor of Magura, and we reverse and remand with instructions to enter summary judgment in favor of Block as to Magura's liability for breach of contract.

### D. Damages

██ Regarding damages, we find that issues of material fact remain as to the extent of Block's damages resulting from Magura's refusal to complete the purchase. Contrary to Block's assertion on appeal, his complaint did not request specific performance. While in his complaint and on appeal Block requests an award of $600,000 plus pre-judgment interest, the designated evidence fails to establish this as the proper measure of damages. "In a breach of contract case, the measure of damages is the loss actually suffered by the breach. However, the non-breaching party is not entitled to be placed in a better position than he would have been if the contract had not been broken." *Sheppard v. Stanich*, 749 N.E.2d 609, 611 (Ind. Ct.App.2001) (citations omitted). Block has not conveyed his interest in the Partnership to Magura, and awarding Block the contract price without specific performance would presumably place him in a better position than if the transaction had been completed. We make no statement regarding the amount of damages to which Block is entitled, but leave it to the parties and the trial court to address and resolve this question on remand.

### Conclusion

The trial court erred in granting summary judgment to Magura and denying summary judgment to Block. We reverse and remand with instructions for the trial court to enter summary judgment in favor of Block as to Magura's liability for breach of contract and to conduct further proceedings with respect to damages.

Reversed and remanded.

NAJAM, J., and CRONE, J., concur.

---

3. We note this conclusion is consistent with two recent, related cases decided by this court. *See MH Equity Managing Member, LLC v. Sands*, 938 N.E.2d 750 (Ind.Ct.App. 2010), *reh'g denied, trans. pending; Sands v. Helen HCI, LLC*, 945 N.E.2d 176 (Ind.Ct.App. 2011), *trans. pending.* In each case, this court concluded the parties' email exchange created an enforceable settlement agreement when the parties agreed to the essential terms of dismissal of their respective actions with prejudice and mutual releases, even though in one case a dispute arose as to the form of the dismissal motion and in neither case were dismissals or releases actually executed. *See MH Equity*, 938 N.E.2d at 757–58; *Sands*, 945 N.E.2d at 180–82.