## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 25 2018, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael F. Vertesch
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Jeffrey J. Jinks
Elizabeth R. McAleese
Carmel, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony L. Elrod, <br> *Appellant-Defendant,* <br><br> v. <br><br> Raymond C. Bauman, et al.[1], <br> *Appellee-Plaintiff.* | January 25, 2018 <br><br> Court of Appeals Case No. <br> 49A02-1703-PL-657 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Patrick J. Dietrick, Judge <br><br> Trial Court Cause No. <br> 49D12-1604-PL-11727 |

**Mathias, Judge.**

---

[1] Appellee-Defendants Nancy Davis, M.A.A.C. Properties, LLC, Madison Avenue Athletic Club, Inc., and Southeast Neighborhood Development Corp. did not file a brief on appeal. However, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court shall be a party on appeal.

[1]  Anthony L. Elrod ("Elrod") and Raymond C. Bauman ("Bauman") entered into court-ordered mediation to resolve a legal dispute between the two erstwhile business associates. After successful mediation, the parties signed a Mediated Settlement Agreement (the "Mediated Settlement Agreement") resolving the dispute between them. Elrod, however, refused to sign or approve of the subsequent Agreement and Release drafted by Bauman's counsel, which incorporated the terms of the Mediated Settlement Agreement but also included additional terms. Bauman then filed a motion to enforce the Mediated Settlement Agreement, which the parties treated as a motion for summary judgment. The trial court granted summary judgment in favor of Bauman, concluding that the Agreement and Release was binding on Elrod.

[2]  Elrod appeals and presents three arguments, which we consolidate and restate as whether the trial court erred in concluding that the Mediated Settlement Agreement was an enforceable contract and not merely an unenforceable agreement to agree. We conclude that the Mediated Settlement Agreement was an enforceable contract and binding on the parties, but that the subsequent Agreement and Release were not signed or otherwise agreed to by Elrod and was therefore not enforceable. Accordingly, we reverse the trial court's order enforcing the Agreement and Release and remand with instructions to instead enforce the terms of the Mediated Settlement Agreement.

## Facts and Procedural History

[3]  For over thirty years, Bauman and Elrod were engaged in an ongoing business venture of buying, developing, and selling real estate in Indianapolis. Bauman

and Elrod were also the owners of Madison Avenue Athletic Club, Inc. and M.A.A.C. Properties, LLC. Bauman contributed capital to the venture, and Elrod managed the real estate. When the business venture sustained a loss, Bauman contributed additional capital. Bauman eventually decided to end the venture with Elrod due to ongoing losses and Elrod's failure to provide Bauman with an accounting of how he managed the venture.

[4] Accordingly, on April 4, 2016, Bauman filed a complaint seeking to appoint a receiver and for declaratory judgment to determine the rights and interests of the parties to the property and assets of the venture. On June 13, 2016, the parties began court-ordered mediation. After a full day of mediation, the parties signed the Mediated Settlement Agreement, which provides in relevant part:

> Raymond Bauman (Ray) and Anthony Elrod (Tony) hereby *stipulate and agree* as follows:
>
> 1. [Elrod] will receive all right, title and interest to lots 1033 - 1035, 1037, 1039, 1041, 1045, 1047, 1049, and 1055 which are all lots bordered by High Street on the west and Prospect Street on the south. [Elrod] will also receive all right, title and interest to the vacated alley due north of parcel 1033-35. [Elrod] will assume and be responsible for all debts, mortgages and other expenses of those parcels. The mortgage on lot 1045 was executed by [Bauman]. [Elrod] will assume and pay that mortgage and indemnify and hold [Bauman] harmless from any nonpayment.
>
> 2. [Bauman] will receive all right, title, and interest to lots 330, 332, 336, and 340 as well as the four-plex and garage which are 1046-1048 and 1042. Such properties are titled either in the name of [Bauman] and/or [Elrod] and MAAC[] Properties, Inc. [Bauman] will assume and be responsible for debts, mortgages and other expenses owing with respect to these parcels.

[Bauman] will indemnify and hold [Elrod] harmless for any nonpayment. [Bauman] will receive all shares equaling 100% of MAAC Properties, Inc.

3.   The vacated alley that is due west of lot 330 shall remain in [Elrod]'s name unless it is purchased by the purchaser of the gym in which case [Elrod] will transfer his interest at no additional cost to Madison Avenue Athletic Club, Inc. If the gym purchaser does not purchase the vacated alley, upon closing of that sale, [Elrod] will deed the vacated alley to [Bauman] so long as [Bauman] remains the owner of the parcels 336 and 340 Prospect set over to him in paragraph 2 above.

4.   Madison Avenue Athletic Club, Inc. owns all right, title, and interest to the gym property located at 306 E. Prospect. Such property is currently listed for sale with Ray Stuck. Each party agrees to cooperate with Ray Stuck in an effort to sell the property. Upon a sale of the gym, [Bauman] will receive the fixed sum of $175,000. Madison Avenue Athletic Club, Inc. shall execute a mortgage against the gym to memorialize this obligation, and the remaining proceeds shall be split on an equal basis. It is anticipated that payments will be made to Madison Avenue Athletic Club, Inc. and the parties will receive their share as distributions pursuant to the terms of this paragraph. Both parties agree that their respective ownership interest is 50/50.

* * *

6.   The parties agree that there [are] only 2 mortgages against the gym. Copies of each are attached hereto. Both mortgages shall be released of record by [Bauman].

7.   The liquor license associated with the gym is held in the name Madison Avenue Athletic Club, Inc. In the event it is not required as part of the sale the gym, [Bauman] and [Elrod] will market the liquor license and split any net proceeds on an equal basis.

8. The gym and the apartments operate on a long-term lease for parking spaces on the south side of Prospect Street. That area referred to as the parking lot is to be retained by the parties, MAAC Properties, Inc. and/or Madison Avenue Athletic Club, Inc. In order to be fully marketable, the parking lot requires the installation of an additional parking lot directly east of the existing parking spaces. If either party invests that sum of money to install the parking lot in order to make the entire parcel marketable, the party who incurred such expense shall be refunded that amount of their investment from any sale proceeds. Remaining sale proceeds will be split on an equal basis.

9. [Elrod] has building materials, tools and supplies located in the basement of both of the apartment buildings and the second and third floor of 336 Prospect set over to [Bauman] by this agreement. He shall have all materials and personal property removed from the apartment buildings no later than October 15, 2016. He shall remove any and all personal property building materials or tools from the four-plex located at 1046-1048 no later than August 15, 2016. All coin operated laundry machines in the laundry rooms and appliances in use in the individual apartments shall remain and are not property of [Elrod]. If not removed by the due date, such property shall become [Bauman]'s property.

10. [Bauman] shall receive, as his sole property and free of any claims by [Elrod], the real estate located at 6427 Canna Court in Indianapolis. There is currently a judgment lien in Cause No. 49D07-1208-MF-031117 against [Elrod] which is lodged as a lien against this parcel. Upon a sale of the gym, an amount of money equal to the unpaid balance of that judgment shall be deducted from [Elrod]'s proceeds and placed into escrow. [Elrod] shall have 10 months from the date hereof to obtain a release of the lien and if he does so, there will be no deduction from his gym proceeds and any escrow will be released. If he is unable to obtain a release within such time, [Bauman] shall satisfy the judgment from such escrowed funds. [Bauman] shall assume and

agree to pay the mortgage that is in [Elrod]'s name and indemnify and hold [Elrod] harmless. [Bauman] shall satisfy the mortgage upon the sale of this property or any interest therein.

11. [Bauman] will also receive all right title and interest to 1027 East Raymond St. in Indianapolis, 2191 Wakeland Road in Paragon, 3711 Farrington Dr. in Bloomington and 2236 - 2238 Shelby St. in Indianapolis.

12. [Elrod] should receive all right title and interest to 3272 Clover Dr. in Plainfield. Such parcel is subject to a mortgage for which [Elrod] is solely obligated. [Elrod] will be responsible and assume the obligation to pay such mortgage and to indemnify and hold [Bauman] harmless with respect to such mortgage.

13. [Elrod] shall manage and operate the gym until it is sold and properly account for all income and expense. In the event either party contributes to such expenses, that party shall be given a note by Madison Avenue Athletic Club, Inc. for such loan plus interest at 4%.

14. The parties, either directly or through their various entities, shall ensure the proper transfer deeds are prepared transferring title to properties as set forth herein and to execute any and all documents deemed reasonably necessary to effectuate the terms of this mediated agreement

15. Both parties agree to share the expenses of mediation on an equal basis[.]

16. [Bauman]'s attorney shall prepare the definitive settlement agreement encompassing and incorporating the terms of this agreement to be reviewed and executed by the parties. Upon its execution, the parties agree to dismiss this litigation as to all parties.

Appellant's App., Vol. 3, pp. 13–17 (emphases added).

[5] On June 23, 2016, the mediator filed a report with the trial court indicating that mediation had been successful and that the parties had reached an agreement on the disputed issues. Bauman and Elrod subsequently took steps to implement the Mediated Settlement Agreement. For example: Elrod surrendered the keys of the apartment complex to Bauman; Elrod surrendered control and management of the apartments to Bauman; Elrod worked with Bauman to transfer all utilities at the apartments to Bauman; Elrod surrendered the rents received from tenants of the apartments to Bauman, which had previously been tendered to Elrod; Elrod filed the necessary documents with the Indiana Secretary of State to reinstate the status of the Madison Avenue Athletic Club, in order to facilitate the sale of the gym as called for in the Mediated Settlement Agreement; Elrod began removing building materials, tools, and supplies from both the Apartments and the four-plex; Elrod listed for sale the property located at 1045 High Street; Nancy Davis ("Davis"), the owner of record of the property at 1041 High Street, listed this property for sale; Elrod paid at least one month's mortgage on the Clover property; and Elrod obtained satisfaction of the judgment lien

[6] Pursuant to the terms of the Mediated Settlement Agreement, Bauman's counsel prepared a document titled "Confidential Settlement Agreement and Mutual Release ("Agreement and Release")" along with the related deeds and other documents necessary to complete the distribution of the assets as agreed to under the Mediated Settlement Agreement. Bauman's counsel sent the

documents, including the definitive settlement agreement draft to be signed. Elrod refused to sign the drafted agreement.

[7] As a result, Bauman filed on July 5, 2016, an emergency motion to enforce the settlement agreement. The court held a hearing on this motion and ordered the parties to participate in a second mediation in an attempt to resolve these issues. This second mediation was unsuccessful. On September 27, 2016, Bauman filed a brief in support of his motion to enforce, which he now termed a motion to enforce and a motion for summary judgment. On that same date, Bauman filed designated evidence in support of his motion to enforce and for summary judgment. Elrod did not respond to this motion.

[8] On November 1, 2016, counsel for Davis entered an appearance and requested an enlargement of time to respond to Bauman's motion, claiming that she was the record owner of one of the properties in dispute and should have been a party to the mediation. Bauman filed an objection to Davis's motion, claiming that both he and Elrod agreed that Davis was the legal title holder of record to 1041 High Street and that the mediation was only intended to quiet the claims between him and Elrod regarding any interest or rights that they might have in the property, not to assign ownership of the property.

[9] On January 6, 2017, the trial court held a hearing on Bauman's motion to enforce. Prior thereto, the parties submitted briefs and affidavits in support of their positions. Bauman argued that the Mediated Settlement Agreement was enforceable, and Elrod claimed that the Mediated Settlement Agreement was

an unenforceable agreement to agree. After taking the matter under advisement, the trial court entered findings of fact and conclusions of law on February 28, 2017, granting Bauman's motion to enforce. The trial court's order required Elrod to execute the Agreement and Release and to abide by the terms contained in the Agreement and Release. Elrod now appeals.

## Standard of Review

[10] The parties agree that the trial court's order is one granting summary judgment in favor of Bauman. On appeal from a trial court's ruling on a motion for summary judgment, we apply the same standard as the trial court. *M.S.D. of Martinsville v. Jackson*, 9 N.E.3d 230, 235 (Ind. Ct. App. 2014), *trans. denied*. That is, we consider only those facts that the parties designated to the trial court to determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. *Id*. We construe all factual inferences in favor of the non-moving party and resolve all doubts as to the existence of a material issue against the moving party. *Id*. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Id*. Once the movant makes this prima facie showing, the burden shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact. *Id*. Still, the party appealing a summary judgment decision bears the burden of persuading this court that the grant or denial of summary judgment was

erroneous. *Id*. Where the facts are undisputed and the issue presented is a pure question of law, we review the matter de novo. *Id*.

## Discussion and Decision

[11] "The law is well established that a mere agreement to agree at some future time is not enforceable." *Wolvos v. Meyer*, 668 N.E.2d 671, 674 (Ind. 1996) (citing *Wallace v. Mertz*, 86 Ind. App. 185, 156 N.E. 562 (1927)). However, parties may enter into an enforceable contract that requires them to execute a subsequent final written agreement. *Id*. In *Wolvos*, our supreme court quoted with approval the following language from a well-known contracts hornbook:

> It is quite possible for parties to make an enforceable contract binding them to prepare and execute a subsequent final agreement. In order that such may be the effect, it is necessary that agreement shall have been expressed on all essential terms that are to be incorporated in the document. That document is understood to be a mere memorial of the agreement already reached. If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; the so-called "contract to make a contract" is not a contract at all.

*Id*. at 674–75 (quoting 1 Arthur Linton Corbin and Joseph M. Perillo, *Corbin on Contracts* § 2.8 at 133–34 (rev. ed. 1993)). Indeed, this court has long held that the "'mere reference to a more formalized contract does not void the presently existing agreement.'" *Id*. at 675 (quoting *McMahan Construction Co. v. Wegehoft Bros., Inc.*, 170 Ind. App. 558, 562, 354 N.E.2d 278, 281 (1976)).

[12] The question of whether an agreement is an enforceable option contract or merely an unenforceable agreement to agree involves two interrelated areas: (a) the intent to be bound and (b) definiteness of terms. *Id*. (citing *Corbin on Contracts* § 2.8 at 131). "Promises may be indefinite . . . . The more important the uncertainty, the stronger the indication is that the parties do not intend to be bound; minor items are more likely to be left to the option of one of the parties or to what is customary or reasonable." *Id*. (quoting Restatement (Second) of Contracts § 33, cmt. f (1979)).

[13] A court faced with this issue should examine whether the parties intended to be bound by the agreement or whether they intended that they would be bound only after executing a subsequent writing document. *Id*. "When one enters into an agreement with the understanding that neither party is bound until a subsequent formal written document is executed, no enforceable contract exists until the subsequent document is executed." *Id.* (citing *Foster v. United Home Improvement Co.*, 428 N.E.2d 1351, 1355 (Ind. Ct. App. 1981)). The court should also determine whether the option agreement lacks such essential terms as to render the contract unenforceable. *Id*.

[14] Moreover, we note that it is the public policy of this state to encourage mediation and mediated settlement agreements. *See Fuchs v. Martin*, 845 N.E.2d 1038, 1041 (Ind. 2006) (noting Indiana judicial policy favors mediation); *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003) (noting that Indiana strongly favors settlement agreements).

[15]     In support of his argument that the Mediated Settlement Agreement was not an enforceable contract, Elrod cites *Equimart Ltd. v. Epperly*, 545 N.E.2d 595 (Ind. Ct. App. 1989). In that case, the parties entered into a letter of intent that stated that they would "attempt, in good faith, to negotiate a definitive purchase agreement" for the sale of stock. *Id*. at 598. The letter of intent further provided that the "consummation of the transaction here contemplated . . . will be subject to the execution of delivery of a Final Agreement in a form reasonably satisfactory to the parties and their respective counsel." *Id*.  On appeal, we held that this language indicated the parties had merely agreed to agree after a period of exclusive negotiation, and that the letter of intent was not a binding purchase contract. *Id*.

[16]     In the present case however, the Mediated Settlement Agreement did not call for the parties merely to continue to negotiate. Instead, it set forth an agreement as to all the material issues in dispute between the parties. In fact, it specifically states that Elrod and Bauman "stipulate and agree" as to all of the provisions of the Mediated Settlement Agreement. Appellant's App., Vol. 3, p. 13. And the signatures of the parties were executed immediately below language stating that "[t]he above is agreed to this June 13, 2016." *Id*. at 17.

[17]     Elrod focuses on paragraph sixteen of the Mediated Settlement Agreement, which provides that "[Bauman]'s attorney shall prepare the definitive settlement agreement encompassing and incorporating the terms of this agreement to be reviewed and executed by the parties. Upon its execution, the parties agree to dismiss this litigation as to all parties." Appellant's App., Vol. 3, pp. 16–17.

This, he claims, indicates that the parties did not intend to be bound unless and until the Agreement and Release was executed. We disagree.

[18] Nothing in the language of the Mediated Settlement Agreement would indicate that the preparation and approval of the Agreement and Release was a condition precedent to the enforceability of the Mediated Settlement Agreement. To the contrary, the language of the Mediated Settlement Agreement specifically states that the parties had agreed to the provisions of that agreement.

[19] We find the present case more akin to *Block v. Magura*, 949 N.E.2d 1261 (Ind. Ct. App. 2011). There, the parties entered into a letter of intent. But this letter, unlike the letter of intent in *Epperly*, did not refer to future negotiations or use conditional or contingent language. *Block*, 949 N.E.2d at 1267. Nor did the letter of intent indicate that new material terms could be included in the subsequent, formal agreement. Instead, it stated that the subsequent formal agreement would "incorporate 'the terms of this Letter of Intent," not other terms. *Id*. The letter of intent also stated that it "confirm[ed]" the terms of the agreement to purchase. *Id*. It also stated that the parties were "willing to complete" the purchase and used the terms "[o]ffer made" and "accepted" to denote the consequence of the parties' signatures. *Id*. Therefore, we concluded that the letter of intent, as a whole, "indicate[d] the parties' intent to be bound, such that the requirement to execute a formal memorandum of their agreement within five days was not a condition precedent to enforceability of the agreement." *Id*.

[20]     The same is true here.  The Mediated Settlement Agreement does not refer to future negotiation or use conditional language. Nor does the Mediated Settlement Agreement call for new material terms to be included in the subsequent Agreement and Release. To the contrary, the provision referring to the preparation of the Agreement and Release states that the subsequent, more formal agreement will "encompass[] and incorporate[] the terms of this agreement[.]" Appellant's App., Vol. 3, pp. 16–17. And the signatures indicated that the parties had "agreed" to the terms set forth in the Mediated Settlement Agreement. Thus, as in *Block*, the language of the Mediated Settlement Agreement as a whole indicates the parties' intent to be bound by the terms of that agreement.

[21]     Elrod also argues that the Mediated Settlement Agreement is unenforceable because the subsequent Agreement and Release, prepared by Bauman's counsel, contains "numerous and significant additional terms[.]" Appellant's Br. at 27. The existence of these additional terms in the Agreement and Release, he argues, indicates that the Mediated Settlement Agreement is non-binding. Again, we disagree. Assuming that the Agreement and Release contain significant additional terms that were not in the Mediated Agreement, this does not mean that the Mediated Settlement Agreement is unenforceable. Instead, it simply means that Elrod is bound by the terms of the Mediated Settlement Agreement instead of the Agreement and Release. *See Reno v. Haler*, 734 N.E.2d 1095, 1099 (Ind. Ct. App. 2000) (holding that wife was bound by terms of unsigned, typewritten agreement to the extent that it conformed to the terms

contained in handwritten notes of the mediator that both parties signed), *adhered to on reh'g*, 743 N.E.2d 1139 (Ind. Ct. App. 2001), *trans. denied*.

[22] We therefore conclude that the trial court erred to the extent that it ordered Elrod to comply with the terms of the Agreement and Release, as that document was not agreed to by the parties. However, Elrod is bound by the terms of the Mediated Settlement Agreement, which was the result of an hours-long mediation at which he was represented by counsel and which was signed by both parties. Accordingly, we reverse the order of the trial court enforcing the terms of the Agreement and Release and remand with instructions that the trial court enforce the terms of the Mediated Settlement Agreement.[2]

Vaidik, C.J., and Crone, J., concur.

---

[2] One could also view our conclusion as enforcing the terms of the Agreement and Release only to the extent that it merely incorporates the terms of the Mediated Settlement Agreement. *See Reno,* 734 N.E.2d at 1099. We think it better to simply state that the parties are bound by the terms of the Mediated Settlement Agreement they executed.